## No. 10,229.

SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD v.
WOODMEN OF THE WORLD.

Decided March 5, 1923.

Action in injunction.   Judgment for plaintiff.

*Affirmed.*

1. EQUITY—*Maxim—Clean Hands.* Record reviewed and held to contain nothing justifying the application of the maxim, "He that hath committed iniquity shall not have equity."

2. INSURANCE—*Fraternal Benefit Societies—Similar Names.* The names, "Woodmen of the World," and "Sovereign Camp of the Woodmen of the World," held to be so similar as to mislead the public, or lead to confusion.

3. CORPORATIONS—*Fraternal Benefit Societies.* The legislative policy of Colorado has been to differentiate between commercial corporations and fraternal benefit societies, the latter being controlled by the provisions of chapter 139, S. L. 1911, and not by chapter 105, S. L. 1919.

4. INSURANCE—*Fraternal Benefit Societies—Insurance Commissioner.* The secretary of state has nothing to do with fraternal benefit societies, it being the legislative intent to place them under control of the insurance department, and that they should be governed by special legislation.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Messrs. HUGHES & DORSEY, Mr. DE E. BRADSHAW, Mr. WALTER M. CAMPBELL, for plaintiff in error.

Mr. GEORGE P. STEELE, for defendant in error.

*En banc.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

THIS action was instituted in the district court by the

defendant in error, as plaintiff, against the Sovereign Camp of the Woodmen of the World, plaintiff in error, as defendant, for an injunction to restrain the defendant from doing business in the state of Colorado under the name "Woodmen of the World" and from exercising or indulging in unfair competition against plaintiff by the use of its name in Colorado. The trial court granted the injunction as prayed and the defendant brings the case here for review. In this opinion the parties will be designated as in the court below.

The admitted facts in the case, so far as material, are that the plaintiff filed its articles of incorporation with the secretary of state on the 20th day of January, 1891, and after that date was authorized to carry on its business in the states of Colorado, Wyoming, Montana, Washington, Oregon, Idaho, Nevada, California and Utah, and ever since that date plaintiff has been doing business in each of the states mentioned; that plaintiff is a domestic fraternal benefit society, or voluntary association, not for profit; that defendant is a corporation organized under the laws of the state of Nebraska; that it is a foreign fraternal benefit society of the same kind and character as the plaintiff; that from the time of its organization until the time when it commenced doing business in Colorado, defendant never did business, or attempted to do business in the states mentioned; that defendant on April 16, 1920, without the knowledge of plaintiff, obtained a license as a foreign fraternal benefit society, from the commissioner of insurance of Colorado, to do business in this state; that so soon as plaintiff learned that such license had been issued by the commissioner of insurance, it filed with the commissioner a written protest against his action in granting the license to the defendant and requested the commissioner to cancel the same, which request the commissioner, on July 22, 1920, refused; that about July 1, 1920, defendant instituted a subordinate camp in the city and county of Denver and thereupon commenced to do business in Colorado, and continued to do business in this

state; that defendant intended to, and would unless restrained, institute many other subordinate camps throughout the state of Colorado.

In addition to the admitted facts the trial court found, so far as material to be here stated, that plaintiff was organized in Colorado as a fraternal benefit society under the name The Head Camp, Pacific Jurisdiction, Woodmen of the World; that it has built up at great expense, and continued effort, a good name, good will and a good reputation; that during all the time after its incorporation plaintiff was known in the state of Colorado as "Woodmen of the World," and also known throughout the state of Colorado by the symbol of its name, the capital letters "W. O. W."; that plaintiff has grown until it has a total membership of more than 30,000 members; that it has more than 140 subordinate camps or lodges in the state; that such subordinate camps are known to the public as branches of plaintiff's society; that all the subordinate camps are conducted under the direction and control of plaintiff; that in the establishment of such subordinate camps in Colorado, the plaintiff has spent large sums of money for advertising the name of plaintiff, "Woodmen of the World," and also its symbol, "W. O. W."; that the plaintiff, "Woodmen of the World," or its symbol, "W. O. W.", has become known to the public generally throughout the state of Colorado as a fraternal benefit society, and as none other than plaintiff's society; that the use of the name, or the symbol thereof by any other person or society would mislead and deceive the public of Colorado, and would lead to confusion of the public and would injure plaintiff in its business; that defendant was organized in Nebraska in 1890 under the name Sovereign Camp of the Woodmen of the World; that its business is substantially the same as the business of the plaintiff; that its methods of doing business and of advertising are substantially the same as that of the plaintiff; that it is known in the places where it does business as the "Woodmen of the World," and that it uses as its symbol the capi-

tal letters "W. O. W."; that in its advertisements the precise words of its name "Sovereign Camp of the" are inconspicuously displayed or used, and the public does not generally know or understand that said words are a part of defendant's name; that the defendant would, in doing business in Colorado, be known as the "Woodmen of the World," by the symbol "W. O. W.", and that the public in Colorado would generally believe and understand that defendant's society, was the plaintiff; that in doing business in Colorado, it would exercise unfair competition against plaintiff, and would cause great confusion of the public as between plaintiff and defendant; that the public in Colorado would naturally believe and understand that plaintiff and defendant were the same and not different and distinct societies; that from the dates when plaintiff and defendant were organized up to the month of August, 1916, neither plaintiff nor defendant depended in any financial manner upon the other; that in all business transactions plaintiff and defendant were· wholly distinct and separate from each other; that in a contract entered into by the plaintiff and defendant in October, 1897, it was provided that plaintiff should have the exclusive right to operate in the state of Colorado, and the eight other states mentioned, and that the defendant would never organize any subordinate camps within those states; that in August, 1916, plaintiff abrogated the contract and changed its name from the Head Camp, Pacific Jurisdiction, Woodmen of the World, to the name Woodmen of the World and gave immediate notice to defendant of such abrogation of the contract and of the change in its name; and that defendant from the month of August, 1916, to April 16, 1920, acquiesced in the setting aside of the contract. The findings of fact by the trial court are amply sustained by the evidence.

The defendant for a reversal of the judgment in this case, relies upon four propositions, which it states as follows: "There are only four propositions we desire to argue at length, i. e., (1) The trial court erred in refusing

to hold that chapter 105, Session Laws of Colorado, 1919, and especially section 3 thereof, applies to the case at bar; (2) The court erred in holding that chapter 139 of the Session Laws of Colorado, 1911, and especially section 12 and 16 thereof, apply to the case at bar; (3) The court erred in refusing to hold that the defendant in error did not come into court with clean hands; (4) The court erred in holding that the names 'Woodmen of the World' and 'Sovereign Camp of the Woodmen of the World' are so similar as to mislead the public or to lead to confusion."

The defendant puts the matter involved thus: "The main point in this suit is upon the question of the similarity of names and is in fact the only real question involved."

We shall dispose of the third proposition first. There seems to be nothing in this case, disclosed by the record, which will justify the application of the maxim, "He that hath committed iniquity shall not have equity." The iniquity must have been done to the defendant and must have been in regard to the matter in litigation. The evidence in this case discloses, and the trial court found, that a certain contract was entered into between plaintiff and defendant in 1897, and that contractual relations existed between the parties until August, 1916, when the contract was abrogated by the plaintiff, immediate notice of which was given to the defendant; that there was no protest on the part of the defendant, but that defendant, in effect, acquiesced in the abrogation of the contract, and for nearly four years made no attempt to invade the territory which up to April, 1920, had been occupied by the plaintiff. It is true that during the time that such contractual relations existed there were numerous misunderstandings and differences growing out of their relations to each other, yet on the whole, there appears to be nothing in plaintiff's conduct or treatment of the defendant, at any time, which justifies the application of the maxim invoked by defendant.

Concerning the defendant's fourth contention, we think

the trial court was right in holding that the names "Woodmen of the World" and "Sovereign Camp of the Woodmen of the World" are so similar as to mislead the public, or to lead to confusion. The conspicuous and distinctive words, in the name of each society, are the words, "Woodmen of the World", and the symbol or capital letters, "W. O. W." are used by both. Each was known to the public as "Woodmen of the World," and that portion of the name of plaintiff, "Head Camp, Pacific Jurisdiction" and that portion of defendant's name, "Sovereign Camp of the" were seldom used, and seem to have been regarded as having little or no significance. The following, among other cases, sustain this proposition: *Talbot v. Independent Order of Owls,* 220 Fed. 660, 136 C. C. A. 268; *Benevolent and Protective Order of Elks v. Improved Benevolent and Protective Order of Elks of the World,* 205 N. Y. 459, 98 N. E. 756, L. R. A. 1915B, 1047, Ann. Cas. 1913E, 639; *Daughters of Isabella v. National Order of the Daughters of Isabella,* 83 Conn. 679, 78 Atl. 333, Ann. Cas. 1912A, 822; *International Committee of Young Women's Christian Associations v. Young Women's Christian Association of Chicago,* 194 Ill. 194, 62 N. E. 551, 56 L. R. A. 888; *Emory v. Grand United Order of Odd Fellows,* 140 Ga. 423, 78 S. E. 922; *Creswell v. Grand Lodge, Knights of Pythias of Georgia,* 133 Ga. 837, 67 S. E. 188, 134 Am. St. Rep. 231, 18 Ann. Cas. 453.

The defendant cites numerous cases, which it claims are parallel to the case at bar, to support its position that the court erred in holding that the names "Woodmen of the World" and "Sovereign Camp of the Woodmen of the World" are so similar as to mislead the public or to lead to confusion. Among them the case of *Supreme Lodge Knights of Pythias v. Improved Order Knights of Pythias,* 113 Mich. 133, 71 N. W. 470, 38 L. R. A. 658, which it quotes at length and upon which it seems to place great reliance. This case is as nearly applicable to the facts in the instant case as any cited by the defendant, but there are essential differences. In the case of *Creswill v. Grand*

*Lodge, Knights of Pythias of Georgia, supra,* the court said in considering the Michigan case:

"The plaintiffs in error rely upon the case of *Supreme Lodge Knights of Pythias v. Improved Order Knights of Pythias,* 113 Mich. 133, * * * in which it was held that these names are not so similar as to cause one to be taken for the other. We do not believe that this case is in line with the trend of authorities on the subject of similarity of names."

To particularize as to the features which distinguish the cases cited by the defendant, from the instant case, would unduly extend this opinion. Suffice it to say that a careful reading of the cases cited by defendant discloses that in their essential particulars they do not apply to the facts in this case as found by the trial court; but if it be conceded, which it is not, that some of them do apply, then we say that the weight and trend of authorities are to the contrary.

We come now to a consideration of propositions one and two urged by the defendant, that the trial court erred in refusing to hold that section 3, chapter 105, Session Laws, 1919, (§ 2245 C. L.) applies to the case at bar, and in holding that chapter 139, Session Laws, 1911, (§§ 2599-2633 C. L.) does apply.

It would serve no useful purpose to review in detail the legislation in this state relative to corporations. It is sufficient to say that since 1877, the legislature in this state has distinguished between manufacturing or commercial corporations, and fraternal benefit societies or corporations, and this distinction has been recognized at all times. The legislative policy of this state has been to differentiate between commercial corporations and fraternal benefit societies or corporations, finally culminating in the act of 1911. This act, chapter 139, Session Laws, 1911, is entitled, "An Act For The Regulation And Control Of Fraternal Benefit Societies." Section 4 thereof provides as follows:

"Except as herein provided, such societies shall be gov-

erned by this act and shall be exempt from all provisions of the insurance laws of this state, not only in governmental relations with the state, but for every other purpose, and no law hereafter enacted shall apply to them, unless they be expressly designated therein." § 2602 C. L.

The defendant contends that the clause in section 4 which provides that; "* * * no law hereafter enacted shall apply to them, unless they be expressly designated therein," is wholly ineffective because one legislature cannot bind a future legislature. While it is true that one legislature cannot bind a future one, yet that clause is not wholly ineffective. This precise question was passed upon in the case of *McKnelly v. Brotherhood of American Yeomen,* 160 Wisconsin, 514, 523, 152 N. W. 169, 172, where it was said, referring to a provision almost identical with ours:

"* * * this provision is nevertheless very significant as an indication of legislative policy, and its continued existence unrepealed is fairly persuasive proof that the policy there expressed has been and still is adhered to."

Section 12 of this act of 1911, (§ 2610 C. L.) after reciting how persons desiring to incorporate such societies, shall proceed, says that they shall make, sign and acknowledge articles of incorporation, in which shall be stated:

"1st. The proposed corporate name of the society, which shall not so closely resemble the name of any society or insurance company already transacting business in this state as to mislead the public or to lead to confusion."

It is further provided in section 12, that the articles of incorporation shall be filed with the commissioner of insurance.

Section 16 (§ 2614 C. L.) of the act provides among other things:

"No foreign society * * * shall transact any business herein without a license from the commissioner of insurance," and then follows this provision:

"Any foreign society desiring admission to this state

shall have the qualifications required of domestic societies organized under this act and have its assets invested as required by the law of the state, territory, district, country, or province where it is organized."

It will be observed that this act does not provide for filing of the articles of incorporation with the secretary of state, nor, so far as this act is concerned, has the secretary of state anything to do with societies or corporations of this character. We think these provisions clearly show that it was the legislative intent to place fraternal benefit societies under the control of the insurance department and that these societies should be governed by special legislation. These provisions plainly show that a foreign society desiring admission to this state must have, as one of its qualifications, a name which shall not so closely resemble the name of any society or insurance company already transacting business in this state as to mislead the public or to lead to confusion.

Chapter 105, Session Laws, 1919, (C. 38, C. L.) is an act concerning corporations amending certain session laws and certain sections of the Revised Statutes, 1908, among others, section 848. This act provides for the filing of certificates with the secretary of state and with the clerk and recorder of the counties where the principal business is to be carried on. Section 848, Revised Statutes, 1908, as amended by section 3 of chapter 105, session laws, 1919, (§ 2245 C. L.) so far as it pertains to the question involved here, reads as follows:

"* * *. But no certificate shall be filed or received for any domestic corporation bearing a name identical with, or similar to, or liable to be mistaken for, the name of any other domestic corporation. But it is expressly provided that this provision shall not apply to corporations organized under the laws of any foreign state or kingdom or of any state or territory of the United States beyond the limits of this state."

The defendant strenuously insists that this section "comes under the general provisions of the corporation

laws of Colorado and is strictly applicable to all corporations alike whether they be fraternal benefit corporations or societies or whether they be manufacturing corporations and no exceptions whatever are made in favor of any particular kind or class of corporations."

With this contention of defendant we do not agree. We are convinced that the provisions of this chapter have no application to fraternal benefit societies and that these societies are controlled by the provisions of the former act.

Perceiving no error in the record the judgment is affirmed.