899 So.2d 949 (2005)
BLUE CROSS AND BLUE SHIELD OF ALABAMA
v.
Donald HODURSKI, M.D.; Norman Hobbs; and Samuel Irvine.
1022154.
Supreme Court of Alabama.
July 16, 2004.
Rehearing Denied October 22, 2004.
*951 Cavender C. Kimble, Leigh Anne Hodge, and Ed R. Haden of Balch & Bingham, LLP, Birmingham; and David R. Boyd and Robin G. Laurie of Balch & Bingham, LLP, Montgomery, for appellant.
David A. Bagwell, Fairhope; George W. Finkbohner III and David G. Wirtes, Jr., of Cunningham, Bounds, Yance, Crowder & Brown, L.L.C., Mobile; and Randall W. Nichols and Richard A. Bearden of Massey, Stotser & Nichols, P.C., Birmingham, for appellees.
*950 LYONS, Justice.
Blue Cross and Blue Shield of Alabama ("BCBS") appeals from a summary judgment entered by the Montgomery Circuit Court in favor of Donald Hodurski, M.D., and two physician assistants, Norman Hobbs and Samuel Irvine (hereinafter collectively referred to as "the providers"). The issue presented is whether a statute included in the Insurance Code, the Physician Assistant Act, codified at § 27-51-1, Ala.Code 1975, is applicable to BCBS, a nonprofit health-care service organization that exists pursuant to Title 10 of the Alabama Code of 1975. BCBS argues that the Physician Assistant Act cannot apply to it because the provisions of § 10-4-115 and § 27-1-4(2), Ala.Code 1975, describing the procedure for making laws regulating insurance applicable to entities such as *952 BCBS, do not provide for its application. The providers argue that the Physician Assistant Act, enacted after the acts that were codified at § 10-4-115 and § 27-1-4(2), expressly describes entities such as BCBS as coming within its terms.

I. Undisputed Material Facts

Dr. Hodurski is a licensed physician practicing in Montgomery. His group of medical doctors employs physician assistants who have provided care to BCBS insureds, including a physician assistant who functioned as a first assistant in surgery performed by Dr. Hodurski. Dr. Hodurski submitted insurance claims to BCBS for services that physician assistant rendered to patients during surgery. BCBS denied those claims. Hobbs and Irvine are physician assistants licensed in Alabama who provided medical services to patients under the supervision of another practicing physician.

II. Procedural History

In 1999, Hobbs and Irvine sued BCBS, alleging that in denying the claims submitted for services rendered by a physician assistant it had violated § 27-51-1, Ala. Code 1975, and seeking certification as a class action. The complaint was later amended to add Dr. Hodurski as a plaintiff. Based on the undisputed facts, both the providers and BCBS moved for a summary judgment. The trial court entered a summary judgment in favor of the providers, holding that the reference in the Physician Assistant Act to medical-service organizations created pursuant to Title 10 specifically and clearly refers to entities such as BCBS;[1] that a subsequently enacted more specific statute, such as § 27-51-1, governed an earlier enacted more general statute, such as § 10-4-115, and, therefore, that § 27-51-1 prevailed over § 10-4-115; and that the requirement in § 10-4-115 was an unconstitutional attempt to limit the Legislature's power because no legislature can require the legislative enactment of a later legislature to be included in a particular title of the Code in order to be effective. BCBS appeals, challenging the standing of all three of the providers and contending that the trial court misapplied the applicable law to the undisputed facts. For the reasons set forth below, we affirm.

III. Standards of Review

The principles of law applicable to reviewing a summary-judgment motion are well settled. To grant such a motion, the judge must determine that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions have been satisfied, the burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
*953 In reviewing a summary judgment, we apply the same standard as did the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala.1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).
The standard of review applicable to a determination of standing was accurately set forth by Judge Crawley in Medical Association of the State of Alabama v. Shoemake, 656 So.2d 863, 865 (Ala.Civ. App.1995) ("No presumption of correctness exists as to the trial court's application of the law to the facts. Jayroe v. Hall, 624 So.2d 522 (Ala.1993). The issue of standing presents a pure question of law, and the trial court's ruling on that issue is entitled to no deference on appeal. Richards v. Cullen, 152 Wis.2d 710, 712, 449 N.W.2d 318, 319 (App.1989).").

IV. Statutory Background

Title 10, Chapter 4, Article 6, of the Alabama Code of 1975, governs nonstock corporations organized for the purpose of establishing, maintaining, and operating not-for-profit health-care service plans under which health-care services are furnished to members of the public who become subscribers to the plan pursuant to contracts (those entities are hereinafter referred to as "Title 10 insurers"). BCBS is organized pursuant to Title 10, Chapter 4, Article 6, i.e., BCBS is a not-for-profit corporation organized for the purpose of establishing, maintaining, and operating a not-for-profit health-care service plan as described above. Thus, BCBS is a Title 10 insurer. Title 27 of the Alabama Code of 1975 addresses, generally, insurance, insurance policies, and insurance companies.
Section 10-4-115, Ala.Code 1975, contains language exempting any Title 10 insurer from the applicability of any "statute of this state applying to insurance companies" unless certain amendments are expressly made to Title 10, Chapter 4, Article 6. Section 10-4-115 provides:
"No statute of this state applying to insurance companies shall be applicable to any corporation organized under the provisions of this article [Title 10, Chapter 4, Article 6] and amendments thereto or to any contract made by the corporation unless expressly mentioned in this article and made applicable; except as follows:
"(1) The corporation shall be subject to the provisions regarding annual premium tax to be paid by insurers on insurance premiums.
"(2) The corporation shall be subject to the provisions of Chapter 55, Title 27, regarding the prohibition of unfair discriminatory acts by insurers on the basis of an applicant's or insured's abuse status.
"(3) The corporation shall be subject to the provisions regarding Medicare Supplement Minimum Standards set forth in Article 2 of Chapter 19 of Title 27, and Long-Term Care Insurance Policy Minimum Standards set forth in Article 3 of Chapter 19 of Title 27.
"(4) The corporation shall be subject to Section 27-1-17, requiring insurers and health plans to pay health care providers in a timely manner.
"(5) The corporation shall be subject to the provisions of Chapter 56 of Title 27, regarding the Access to Eye Care Act.
"(6) The corporation shall be subject to the regulations promulgated by the Commissioner of Insurance pursuant to Sections 27-7-43 and 27-7-44.

*954 "(7) The corporation shall be subject to the provisions of Chapter 54 of Title 27."
(Emphasis added.)
Section § 27-1-4(2), Ala.Code 1975, provides:
"This title [Title 27] shall not apply as to:
"....
"(2) Nonprofit corporations for establishment of hospitalization plan [sic] under Section 10-4-100 et seq., except to the extent now or hereafter provided in such laws...."
In 1997, the Legislature enacted § 27-51-1, Ala.Code 1975, known as the "Physician Assistant Act." That Act provides:
"(a) An insurance policy or contract providing for third-party payment or prepayment of health or medical expenses shall include a provision for the payment to a supervising physician for necessary medical or surgical services that are provided by a licensed physician assistant practicing under the supervision of the physician, and pursuant to the rules, regulations, and parameters for physician assistants, if the policy or contract pays for the same care and treatment provided by a licensed physician or doctor of osteopathy.
"(b) An insurance policy or contract subject to this section shall not impose a practice or supervision restriction which is inconsistent with or more restrictive than provided by law.
"(c) This section shall apply to services provided under a policy or contract delivered, continued, or renewed in this state on or after August 1, 1997, and to any existing policy or contract, on the policy's or contract's anniversary or renewal date, or upon the expiration of the applicable collective bargaining contract, if any, whichever is later.
"(d) This section does not apply to policyholders or subscribers eligible for coverage under Title XVIII of the federal Social Security Act or any similar coverage under a state or federal government plan.
"(e) For purposes of this section, third-party payment or prepayment includes an individual or group policy or accident or health insurance or individual or group hospital or health care service contract, an individual or group health maintenance organization contract, an organized delivery system contract, a medical service organization created pursuant to Article 6, Chapter 4, Title 10, or a preferred provider organization contract.
"(f) This section shall not be interpreted to require an individual or group health maintenance organization, an organized delivery system, a medical service organization created pursuant to Article 6, Chapter 4, Title 10, or a preferred provider organization or arrangement to provide payment or prepayment to a physician for services provided by a physician assistant, unless the supervising physician of the physician assistant has entered into a contract or other agreement to provide services with the individual or group health maintenance organization, the organized delivery system, the medical service organization, or the preferred provider organization or arrangement."
(Emphasis added.)

V. Standing to Maintain the Action

Because the question of standing implicates subject-matter jurisdiction, we address it first. See Moore v. John Hancock Life Ins. Co., 876 So.2d 443, 448 (Ala. 2003). BCBS challenges the standing of the three providers, relying on American Automobile Insurance Co. v. McDonald, *955 812 So.2d 309, 312 (Ala.2001), which holds that the Insurance Code provides no private right of action for a violation of a provision of the Code that prohibits selling insurance without a license. The trial court in this case, citing, among other cases, State Farm Mutual Automobile Insurance Co. v. Scott, 707 So.2d 238 (Ala. Civ.App.1997), rejected the challenge to standing, analogizing the present case to actions against insurance companies involving uninsured-motorist claims where the terms of the policy were not in harmony with the scope of coverage mandated by statute. BCBS seeks to distinguish Scott by pointing to the contractual rights that underlie the claim in Scott. This distinction has merit. However, it does not avail BCBS, because the statutory scheme endows Dr. Hodurski with the status of a third-party beneficiary under the contract between BCBS and its insureds.
Section 27-51-1(a) provides that "[a]n insurance policy or contract providing for third-party payment or prepayment of health or medical expenses shall include a provision for the payment to a supervising physician for necessary medical or surgical services that are provided by a licensed physician assistant practicing under the supervision of the physician...." (Emphasis added.) Section 27-51-1(f) requires that the supervising physician must have entered into a contract with the medical-service organization in order to render the Physician Assistant Act applicable. Dr. Hodurski provides care to BCBS insureds. Obviously, Dr. Hodurski has the requisite contractual relationship with BCBS mandated by § 27-51-1(f). As previously noted, BCBS has denied his claims for payment for services provided by a licensed physician assistant under his supervision. Statutorily required provisions of an insurance contract are read into the policy, even if the policy itself does not contain the required provisions. See the following passage dealing with uninsured-motorist coverage from 11 Am.Jur. Trials, Uninsured Motorist Claims § 6, p. 86 (1966), quoted in State Farm Automobile Insurance Co. v. Baldwin, 470 So.2d 1230 (Ala.1985), overruled on other grounds, Ex parte Carlton, 867 So.2d 332 (Ala.2003):
"`Where a statute [an Act] requiring uninsured motorist coverage is broad and comprehensive in scope, it establishes as a matter of public policy that every bodily injury motor vehicle policy should provide uninsured motorist coverage; the code [Act] becomes in effect a part of every policy of insurance to which it is applicable, as if it were written out in full in the policy itself.'"
470 So.2d at 1232 (quoting Higgins v. Nationwide Mut. Ins. Co., 291 Ala. 462, 465, 282 So.2d 301, 303-04 (1973)) (emphasis added). Dr. Hodurski is a third-party beneficiary of the contract between BCBS and its insureds and as such has standing to assert his right, engrafted upon that contract by statute, to secure payment of his claims.
BCBS also challenges the standing of Hobbs and Irvine, the physician assistants. The trial court, however, made no finding as to their standing. Because Dr. Hodurski does have standing, that question is academic.

VI. Applicability of the Physician Assistant Act to BCBS

BCBS contends that, as a medical-service organization created pursuant to Title 10, Chapter 4, Article 6, of the Alabama Code of 1975, it is not subject to the Physician Assistant Act. BCBS's view of legislative authority to bind future legislatures is inconsistent with the mainstream of our caselaw. BCBS's reading of legislative intent does not withstand the glare of the bright light of the plain, unambiguous language in § 27-51-1(e). Those members *956 of the Legislature voting for the bill and the governor who signed it into law would be astonished to learn that they were simply wasting their time, as BCBS's argument invites us to conclude.
By way of recapitulation, § 10-4-115, Ala.Code 1975, enacted in 1939 and last amended in 2002, provides, in pertinent part:
"No statute of this state applying to insurance companies shall be applicable to any corporation organized under the provisions of this article [Article 6 of Chapter 4 of Title 10] and amendments thereto or to any contract made by the corporation unless expressly mentioned in this article and made applicable; except as follows ... [specific exceptions omitted]."
The Insurance Code (Title 27) at § 27-1-4(2) contains a parallel reference, which provides that "[t]his title [Title 27] shall not apply as to ... [n]onprofit corporations for establishment of hospitalization plan [sic] under Section 10-4-100 et seq., except to the extent now or hereafter provided in such laws."
In Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293 (Ala. 1998), this Court, answering a question certified to it by the United States Court of Appeals for the Eleventh Circuit, considered the effect of amendments to the Insurance Code that prohibited certain practices and declared insurance contracts inconsistent with the provisions of the acts proposing those amendments to be void. However, those amendments did not in any way refer specifically to companies operating pursuant to Title 10, Chapter 4, of the Code. This Court held:
"It is a familiar principle of statutory interpretation that the Legislature, in enacting new legislation, is presumed to know the existing law. Applying that principle to this case, we can presume that if the Legislature had intended for § 27-1-19 and §§ 27-19A-1 to -11, and §§ 27-45-1 to -9 to apply to companies like Blue Cross, it could have eliminated any question by expressly amending § 10-4-100 et seq. to specify that those statutes would, in fact, apply. Based on the foregoing, we conclude that Blue Cross is exempted from the Alabama Provider Acts by the provisions of § 10-4-115 and § 27-1-4."
714 So.2d at 297 (citation omitted; emphasis added).
The statute at issue in this proceeding, § 27-51-1, expressly refers to companies, such as BCBS, operating pursuant to Title 10, Chapter 4, of the Alabama Code. Nielsen held that the statutes under consideration there were not sufficiently specific to justify the conclusion that the Legislature intended to deviate from the requirements in § 10-4-115 and § 27-1-4 for amendments applicable to companies, such as BCBS, operating pursuant to Title 10, Chapter 4, of the Alabama Code. Nielsen does not establish a hard-and-fast rule that the only way the Legislature could ever subject companies, such as BCBS, operating pursuant to Title 10, Chapter 4, of the Alabama Code, to changes in the Insurance Code would be by way of the amendment procedure provided for by § 10-4-115 and § 27-1-4. In other words, this Court held in Nielsen that the Legislature "could have eliminated any question by expressly amending § 10-4-100 et seq. to specify that those statutes would, in fact, apply." 714 So.2d at 297 (emphasis added). It did not hold in Nielsen that such an amendment is the exclusive means for eliminating any question; the facts here presented were not before this Court in Nielsen, and, further, such a holding would go beyond settled principles of law dealing with the power of the Legislature to bind *957 subsequent legislatures to a specific course of conduct.[2]
This Court has previously considered the authority of a legislative body to bind future legislative bodies. In Van Sandt v. Bell, 260 Ala. 556, 558, 71 So.2d 529, 531 (1954), dealing with a municipality, this Court held, "While under section 89 of the Constitution a city cannot enact an ordinance inconsistent with a state law, there is and can be no legislative restriction on its own power to make an enactment inconsistent with an act previously passed by it." To like effect, see Garrett v. Colbert County Board of Education, 255 Ala. 86, 92, 50 So.2d 275, 279 (1950) ("The principle is well established that neither the State or any inferior legislative body can alienate, surrender or abridge its right or ability to function in the future.").
This Court has also previously addressed the authority of the Legislature to enact legislation that conflicts with procedural standards in previously enacted legislation. See Town of Brilliant v. City of Winfield, 752 So.2d 1192, 1197 (Ala.1999), dealing with § 11-42-6(a), Ala.Code 1975, requiring that a map showing certain relationships be attached to any legislation incorporating land into a municipality. By local act, the Legislature incorporated certain lands into a municipality, attaching a map that was inconsistent with the requirements of § 11-42-6(a). In Town of Brilliant, this Court quoted with approval Justice Maddox's special writing in Opinion of the Justices No. 265, 381 So.2d 183, 187 (Ala.1980), where he stated:
"`I realize that prior Legislatures have passed many statutes which contain procedural provisions, which purport to govern legislative procedures. When a succeeding Legislature follows any procedural rules provided for by statute, without objection, the Legislature, by its very action, is adopting the statutory procedure, and no problem is created. When a succeeding Legislature, however, does not wish to adopt a statutory procedure which has been established by a previous Legislature, as is the case here, I believe that the Legislature can change that procedure without adopting a Bill.'"
752 So.2d at 1197. This Court then cited with approval Newton v. State, 375 So.2d 1245 (Ala.Crim.App.1979), in which the Court of Criminal Appeals rejected a challenge to a local bill on the ground that it had not been enacted in compliance with the procedure established in § 12-1-6, Ala. Code 1975, requiring that bills dealing with the judiciary be submitted to the administrative director of courts for an opinion. This Court in Town of Brilliant quoted from that portion of Newton setting forth the rule as follows:
"`"One legislature cannot bind a succeeding legislature or restrict or limit the power of its successors to enact legislation, except as to valid contracts entered into by it, and as to rights which have actually vested under its acts, and no action by one branch of the legislature can bind a subsequent session of the same branch. Nevertheless during sessions legislative bodies may do and undo, consider and reconsider, as often as they think proper, as only the final result will be regarded as the thing done, and a legislature, in the anticipation *958 of a probable future condition, may provide legal rules to apply thereto."'"
752 So.2d at 1198, quoting Newton, 375 So.2d at 1248, quoting in turn 82 C.J.S. Statutes § 9 (1953).
The general rule in other jurisdictions is consistent with the plenary power of each succeeding legislature to enact legislation inconsistent with that enacted in a prior legislative session. For example, see Manigault v. S.M. Ward & Co., 123 F. 707, 717 (D.S.C.1903), aff'd, Manigault v. Springs, 199 U.S. 473, 26 S.Ct. 127, 50 L.Ed. 274 (1905), holding as follows:
"When, therefore, one General Assembly passes an act like this in question, declaring that no bill shall be introduced or entertained in either House of the General Assembly unless certain prerequisite conditions are fulfilled  conditions not existing in the Constitution  it assumes a power which it does not possess. If, notwithstanding, any succeeding General Assembly shall receive and entertain a bill which has not fulfilled these conditions, this action on its part is either a declaration of its independence of these restrictions, or it is a repeal of the previous act pro tanto. `Acts of Parliament,' says Blackstone (1 Bl. Comm. 90), `derogating to the power of subsequent Parliaments, bind not.'"
(Emphasis added.) See also 1A Norman J. Singer, Statutes and Statutory Construction § 22:2, pp. 244-45 (6th ed.2002 rev.), "A legislature cannot limit the power of amendment of a subsequent legislature, either as to the extent or manner of its exercise." (Footnote omitted.) In Atlas v. Wayne County, 281 Mich. 596, 599, 275 N.W. 507, 509 (1937), the Supreme Court of Michigan, citing, Corpus Juris, stated:
"The power to amend and repeal legislation as well as to enact it is vested in the Legislature, and the Legislature cannot restrict or limit its right to exercise the power of legislation by prescribing modes of procedure for the repeal or amendment of statutes; nor may one Legislature restrict or limit the power of its seccessors [sic]. 12 C.J. page 806."
See also Solberg v. Davenport, 211 Iowa 612, 624, 232 N.W. 477, 483 (1930), where the Supreme Court of Iowa held:
"The general rule is too well settled to need citation of authority that each legislature is an independent body, entitled to exercise all legislative power under the limitation of the Constitution of this state and the United States, and no legislature can pass a law which would be binding on subsequent legislatures. We think this rule applies to the situation before us. In other words, Section 47 of the Code [of 1927] was utterly disregarded by the legislature; yet this act cannot be held invalid because thereof. Authorities on this proposition are not numerous, but those we have been able to find announce this doctrine. See Ma[n]igault v. S.M. Ward & Co., 123 F. 707 [(D.S.C.1903)]; Cook v. State, 26 Ind.App. 278 (59 N.E. 489) [(1903)]; State, Use Rathbone, v. County Court of Wirt County, 37 W.Va. 808 (17 S.E. 379) [(1893)]."
The result in Nielsen, rejecting an attempt to apply a general law that did not expressly refer to entities such as BCBS, is comparable to the result reached in Sovereign Camp, W.O.W. v. Woodmen of the World, 73 Colo. 57, 63-64, 213 P. 579, 582 (1923). A Colorado statute regulating fraternal-benefit societies provided:
"`[S]uch societies shall be governed by this act and shall be exempt from all provisions of the insurance laws of this state, not only in governmental relations with the state, but for every other purpose, and no law hereafter enacted shall *959 apply to them, unless they be expressly designated therein.'"
(Emphasis added.) One of the parties contended that, based on the rule prohibiting a legislature from binding a future legislature, a statute that was applicable to all corporations without limitation but which did not refer specifically to fraternal-benefit societies applied to such societies, notwithstanding the exemption statute referred to above. In rejecting this argument, the Supreme Court of Colorado stated:
"While it is true that one Legislature cannot bind a future one, yet that clause is not wholly ineffective. This precise question was passed upon in the case of McKnelly v. Brotherhood of American Yeomen, 160 Wis. 514, 523, 152 N.W. 169, 172 [(1915)], where it was said, referring to a provision almost identical with ours:
"`... This provision is nevertheless very significant as an indication of legislative policy, and its continued existence, unrepealed, is fairly persuasive proof that the policy there expressed has been and still is adhered to.'"
73 Colo. at 64, 213 P. at 582. Thus, the Supreme Court of Colorado held that while a clause purporting to exempt fraternal-benefit societies from future legislation was not "wholly ineffective," it is useful in a proper setting to gauge legislative intent and then it is only "fairly persuasive proof." Id. Under the facts in Sovereign Camp, W.O.W. v. Woodmen of the World, like the Legislature in Nielsen, the Colorado legislature was presumed to be aware of the need to refer to fraternal-benefit societies, and the silence on this point justified the conclusion that the legislature could not have intended to repeal the requirements of the Colorado statute requiring express reference to fraternal-benefit societies in future enactments.
Section 27-51-1, Ala.Code 1975, suffers from no such silence; it expressly refers to Title 10 insurers. Section 27-51-1 was enacted in 1997 as Act No. 97-635, Ala. Acts 1997, pp. 1157-58. Act No. 97-635 makes no reference to Title 27. Indeed, the only existing statutory law to which Act No. 97-635 specifically refers is Title 10, Chapter 4, Article 6. In the codification process, the Code Commissioner placed the text of Act No. 97-635 in Title 27. That choice should not affect our determination of legislative intent in enacting Act No. 97-635.[3]
This Court recently restated the doctrine of implied repeal in Shiv-Ram, Inc. v. McCaleb, 892 So.2d 299, 312 (Ala.2003), as follows:
"`"A concise statement of the rule is contained in City of Birmingham v. Southern Express Co., 164 Ala. 529, 538, 51 So. 159, 162 [(1909)]:
"`"`Repeal by implication is not favored. It is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former....'
"`"Implied repeal is essentially a question of determining the legislative intent as expressed in the statutes. When the provisions of two statutes are directly repugnant and cannot be reconciled, it must be presumed that the legislature intended an implied repeal, and the later statute prevails as *960 the last expression of the legislative will."'"
(Quoting Fletcher v. Tuscaloosa Fed. Sav. & Loan Ass'n, 294 Ala. 173, 177, 314 So.2d 51, 55 (1975), quoting in turn State v. Bay Towing & Dredging Co., 265 Ala. 282, 289, 90 So.2d 743, 749 (1956) (citations omitted).)
At oral argument, counsel for the providers disclaimed reliance on the doctrine of implied repeal as a basis for affirmance of the trial court's judgment. This Court, however, can affirm a judgment on a basis not asserted in the trial court. Cain v. Howorth, 877 So.2d 566, 584 (Ala.2003); Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988). This Court cannot avoid its obligation to affirm the trial court's judgment if that court has reached the correct result, because a litigant has miscalculated the applicability of the appropriate rule of law. See Williams-Guice v. Board of Educ. of Chicago, 45 F.3d 161, 164 (7th Cir.1995) ("Still, litigants' failure to address the legal question from the right perspective does not render us powerless to work the problem out properly. A court of appeals may and often should do so unbidden rather than apply an incorrect rule of law to the parties' circumstances.") (citing United States Nat'l Bank of Oregon v. Independent Ins. Agents of America, Inc., 508 U.S. 439, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993); Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991)). See also Forshey v. Principi, 284 F.3d 1335, 1357 n. 20 (Fed. Cir.), cert. denied, 537 U.S. 823, 123 S.Ct. 110, 154 L.Ed.2d 33 (2002), superseded by statute on other grounds as stated in Morgan v. Principi, 327 F.3d 1357, 1358-59 (Fed.Cir.2003) ("`Appellate review does not consist of supine submission to erroneous legal concepts even though none of the parties declaimed the applicable law below. Our duty is to enunciate the law on the record facts. Neither the parties nor the trial judge, by agreement or passivity, can force us to abdicate our appellate responsibility.'") (quoting Empire Life Ins. Co. of America v. Valdak Corp., 468 F.2d 330, 334 (5th Cir.1972)). The Supreme Court of Wisconsin stated the principle quite succinctly in Laffey v. City of Milwaukee, 4 Wis.2d 111, 115, 89 N.W.2d 801, 803 (1958), when it held, "Where we find an order to be correct, we may affirm it notwithstanding that counsel supported it on an erroneous theory, or even disclaimed the view of the law which we hold to be right."
The procedure prescribed in § 10-4-115 and § 27-1-4(2) for subjecting companies, such as BCBS, operating pursuant to Title 10, Chapter 4, of the Alabama Code, as to a statute of this State applying generally to insurance companies cannot be reconciled with that portion of § 27-51-1(e) plainly and unambiguously subjecting "a medical service organization created pursuant to Article 6, Chapter 4, Title 10" to the terms of that statute. We flout clear legislative intent if we refuse to recognize implied repeal of the conflicting provisions of § 10-4-115 and § 27-1-4 under these circumstances. If we so refuse and thus decline to enforce the clear language of § 27-51-1(e), we are saying to the Legislature, "We can plainly see what you intended, but we are ignoring it in favor of a prior inconsistent enactment."
BCBS points to the subsequent reenactment of § 10-4-115 on three occasions since the Physician Assistant Act was enacted and argues that those legislatures reenacting § 10-4-115 did not consider the exemption provisions found in § 10-4-115 and § 27-1-4 to have been repealed by implication by the enactment of the Physician Assistant Act of 1997. We reject that argument. First, the application of the doctrine of implied repeal to § 10-4-115 *961 and § 27-1-4 by reason of § 27-51-1(e) does not require the sweeping conclusion that § 27-51-1(e) repeals § 10-4-115 and § 27-1-4 for all purposes. The implied repeal applies only to the limited extent set forth in § 27-51-1(e) in the context of requiring payment for the necessary medical or surgical services provided by a licensed physician assistant. Second, to the extent that the subsequent reenactments of § 10-4-115 and § 27-1-4 since 1997 are deemed inconsistent with § 27-51-1(e), they cannot be deemed to constitute an implied repeal of § 27-51-1(e) unless the reenactments are a special law and the Physician Assistant Act of 1997 can be described as a general law. See Connor v. State in re Boutwell, 275 Ala. 230, 233-34, 153 So.2d 787, 791 (1963), quoting from 50 Am.Jur. Statutes § 561 as follows:
"`It has been broadly stated that the rule as to repeals implied from repugnancy of provisions applies as well between a general and a special or local act as between two general ones. As a general rule, however, general or broad statutory provisions do not control, modify, limit, affect, or interfere with special or specific provisions.'"
This Court in Boutwell also quoted from 50 Am.Jur. Statutes § 564 as follows:
"`It is, however, equally true that the policy against implied repeals has peculiar and special force when the conflicting provisions, which are thought to work a repeal, are contained in a special or specific act and a later general or broad act. In such case, there is a presumption that the general or broad law was not designed to repeal the special or specific act, but that the special or specific act was intended to remain in force as an exception to the general or broad act, and there is a tendency to hold that where there are two acts, one special or specific act which certainly includes the matter in question, and the other a general act which standing alone would include the same matter so that the provisions of the two conflict, the special or specific act must be given the effect of establishing an exception to the general or broad act.'"
275 Ala. at 234, 153 So.2d at 791 (emphasis added).
The subsequent reenactments of § 10-4-115 and § 27-1-4 cannot be described as special legislation, and the Physician Assistant Act of 1997 cannot in this context be treated as general legislation. Sections 10-4-115 and 27-1-4 deal generally with the manner in which corporations organized under the provisions of Title 10, Chapter 4, Article 6 are subject to any statute of this State applicable to insurance companies. Section 27-51-1, dealing with the narrow question of the compensation of physician assistants, in the plainest of terms makes its provisions specifically applicable to corporations organized under the provisions of Title 10, Chapter 4, Article 6. See § 27-51-1(e). Therefore, the Physician Assistant Act, with its special provision dealing expressly with its applicability to corporations organized under the provisions of Title 10, Chapter 4, Article 6, cannot be viewed as the more general statute. Because the Physician Assistant Act, § 27-51-1, is not the more general statute, it is not subject to repeal by implication by the reenactments of the general provisions prescribing the manner of subjecting entities such as BCBS to any law of this State regulating insurance.

VII. Conclusion

For the reasons stated above, we affirm the judgment of the trial court.
AFFIRMED.
*962 NABERS, C.J., and HOUSTON, JOHNSTONE, and HARWOOD, JJ., concur.
SEE, BROWN, WOODALL, and STUART, JJ., dissent.
WOODALL, Justice (dissenting).
In Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 296-97 (Ala.1998), this Court stated:
"[W]e conclude that the language of § 10-4-115 plainly and unambiguously states that corporations formed under § 10-4-110 et seq., as [BCBS] was, are not regulated by the insurance laws of this State unless § 10-4-110 et seq. are expressly amended to apply such laws. This interpretation is also supported by the wording of § 27-1-4, which expressly states that laws appearing in the Alabama Insurance Code (Title 27) do not apply to companies, like [BCBS], that are organized under the provisions of § 10-4-100, unless § 10-4-100 et seq. expressly provide that such laws apply."
The majority does not overrule Nielsen, and, in my opinion, construes the holding in Nielsen in an unduly narrow manner. Therefore, I respectfully dissent.
STUART, Justice (dissenting).
I dissent. Blue Cross and Blue Shield of Alabama ("BCBS") argues that in order for nonstock corporations organized pursuant to Article 6 of Chapter 4 of Title 10 of the Alabama Code of 1975 ("Title 10 insurers") to be subject to insurance statutes, the Legislature must expressly amend § 10-4-115 to so state. BCBS also points out that this requirement is repeated in Title 27 of the Alabama Code, which has its own exemption statute. See § 27-1-4(2), Ala.Code 1975, providing:
"This title [Title 27] shall not apply as to:
"....
"(2) Nonprofit corporations for establishment of hospitalization plan [sic] under Section 10-4-100 et seq., except to the extent now or hereafter provided in such laws. . . ."
BCBS argues that because when it enacted the Physician Assistant Act the Legislature did not expressly amend §§ 10-4-115 or 27-1-4(2), Ala.Code 1975, to state that Title 10 insurers are subject to the Physician Assistant Act, that Act is not applicable to BCBS, regardless of the specific language included in the Act.
BCBS relies upon Blue Cross & Blue Shield of Alabama v. Nielsen, 714 So.2d 293 (Ala.1998) ("Nielsen III"), as controlling authority. I agree that Nielsen III is controlling. In Nielsen III, this Court addressed a situation almost identical to the one presented here. Nielsen III was a certified question presented to this Court in a case originally filed in the federal district court. In that case, Blue Cross & Blue Shield of Alabama v. Nielsen, 917 F.Supp. 1532 (N.D.Ala.1996) ("Nielsen I"), BCBS challenged three insurance statutes as inapplicable to it because of the exemption statutes. The statutes at issue in Nielsen III  § 27-1-19 (the Assignment Act); §§ 27-19A-1 to -11 (the Dental Act); and §§ 27-45-1 to -9 (the Pharmacy Act)  provided that they applied to all "nonprofit health service organizations," which included BCBS.[4] However, the federal district court held that they were not applicable to BCBS and any other Title 10 insurers because § 10-4-115 had not been expressly amended to reference the Assignment Act, the Dental Act, and the Pharmacy Act.
*963 The plaintiffs in Nielsen I appealed and, on appeal, the United States Court of Appeals for the Eleventh Circuit (see Blue Cross & Blue Shield v. Nielsen, 142 F.3d 1375 (11th Cir.1998) ("Nielsen II") certified questions of state law to the Alabama Supreme Court. The Alabama Supreme Court responded to the first certified question:
"Based upon our reading of these two Code provisions [§ 10-4-115 and § 27-1-4], and applying the principles of statutory construction heretofore adopted by this Court, we conclude that the language of § 10-4-115 plainly and unambiguously states that corporations formed under § 10-4-110 et seq., as [BCBS] was, are not regulated by the insurance laws of this State unless § 10-4-110 et seq. are expressly amended to apply such laws. This interpretation is also supported by the wording of § 27-1-4, which expressly states that laws appearing in the Alabama Insurance Code (Title 27) do not apply to companies, like [BCBS], that are organized under the provisions of § 10-4-100, unless § 10-4-100 et seq. expressly provide that such laws apply.
"It is a familiar principle of statutory interpretation that the Legislature, in enacting new legislation, is presumed to know the existing law. Applying that principle to this case, we can presume that if the Legislature had intended for § 27-1-19 and §§ 27-19A-1 to -11, and §§ 27-45-1 to -9 to apply to companies like [BCBS], it could have eliminated any question by expressly amending § 10-4-100 et seq. to specify that those statutes would, in fact, apply. Based on the foregoing, we conclude that [BCBS] is exempted from the [Assignment Act, the Dental Act, and the Pharmacy Act] by the provisions of § 10-4-115 and § 27-1-4. The Court of Appeals' first question is answered in the affirmative."
Nielsen III, 714 So.2d at 296-97 (citations omitted). The Alabama Supreme Court in Nielsen III went on to reject the argument presented in this case by the providers that the amendment requirement of § 10-4-115, Ala.Code, imposed an unconstitutional requirement on the Legislature relating to the enactment of legislation.[5]
Nielsen III is applicable, and it controls this case. As we did in that case, we must presume that the Legislature knew the law when it enacted the Physician Assistant Act in 1997. Therefore, we must presume that the Legislature was aware of the exemptions created by §§ 10-4-115 and 27-1-4, Ala.Code 1975, when it enacted the Physician Assistant Act. We also presume that the Legislature was aware of the steps specified by those statutes that could be taken to defeat the exemptions offered by those statutes and to make the Physician Assistant Act applicable to Title 10 insurers. If the Legislature had intended for § 27-51-1 to apply to Title 10 insurers, it could have easily eliminated any question by expressly amending § 10-4-115 to specify that the Physician Assistant Act would, in fact, apply. See Nielsen III, supra. It did not do so. Alternatively, if the Legislature was unhappy with the exemptions provided by § 10-4-115 and § 27-1-4(2), Ala.Code, and intended to repeal the exemptions previously granted to Title 10 insurers, it could have expressly done so.[6] It did not do so.
*964 BCBS also argues that the summary judgment in favor of Dr. Hodurski and the physician assistants cannot be supported on a theory of an implied repeal. I agree. In Shiv-Ram, Inc. v. McCaleb, 892 So.2d 299, 312 (Ala.2003), this Court recited the long-standing principles applicable to repeal by implication:
"This Court stated in Fletcher [v. Tuscaloosa Fed. Sav. & Loan Ass'n, 294 Ala. 173, 176-77, 314 So.2d 51 (1975)]:
"`Repeal by implication is admittedly not a favored rule of statutory construction, but in State v. Bay Towing and Dredging Company, 265 Ala. 282, 289, 90 So.2d 743, 749 (1956), we find:
"`"In Alabama, the law governing implied repeals is well-settled and the cases on this point are singularly consistent....:
"`"`Repeal by implication is not favored. It is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former....'
"`"Implied repeal is essentially a question of determining the legislative intent as expressed in the statutes. When the provisions of two statutes are directly repugnant and cannot be reconciled, it must be presumed that the legislature intended an implied repeal, and the later statute prevails as the last expression of the legislative will."'"
(Citations omitted.) See also Brown v. Board of Educ. of Montgomery County, 863 So.2d 73, 81 (Ala.2003) ("`"The implied repeal of a statute by another statute is not favored by the courts and will be found only when the two statutes are so repugnant to, or in such conflict with, one another that it is obvious that the Legislature intended to repeal the first statute."'" (quoting Cook v. Lloyd Noland Found., Inc., 825 So.2d 83, 88 (Ala.2001))).
In this case, the exemption statutes are the earlier enacted statutes. The Physician Assistant Act is the subsequently enacted statute. After reviewing the express language of the Physician Assistant Act, I am convinced that the Physician Assistant Act continues to have a field of operation (although admittedly a small one), even after Title 10 insurers are exempted from the reach of that Act. Second, even after the Physician Assistant Act was enacted and codified, three subsequently convened legislatures amended § 10-4-115 to reflect that Title 10 insurers were subject to other insurance statutes. See § 10-4-115, Ala. Code 1975, amended in 2000 (Act No. 2000-595 and Act No. 2000-797, Ala. Acts 2000), 2001 (Act No. 2001-445, Act No. 2001-447, and Act No. 2001-702, Ala. Acts 2001), and 2002 (Act No. 2002-511, Ala. Acts 2002). Thus, it is apparent that those subsequent legislatures did not consider the exemption provisions found in § 10-4-115 and § 27-1-4 to have been repealed by implication by the Physician Assistant Act of 1997. Therefore, the Physician Assistant Act and the exemption statutes are not so repugnant to each other that it is obvious to me that the Legislature intended to repeal the exemption statutes.[7]
*965 I also disagree with the trial court's conclusion that because § 27-51-1 was the more specific statute, § 27-51-1 must prevail over § 10-4-115 as the "last expression of legislative will." (Order of the trial court, August 11, 2003.) I do not disagree with the general principle recited by the trial court; however, I disagree with the trial court's application of that principle because I do not believe that the Physician Assistant Act is the more specific statute in this case.
The Physician Assistant Act applies to "an individual or group health maintenance organization, an organized delivery system, a medical service organization created pursuant to Article 6, Chapter 4, Title 10, or a preferred provider organization or arrangement. . . ." The Act requires that all of the listed organizations provide payments for certain services rendered by physician assistants.
In comparison, § 10-4-115 applies exclusively to Title 10 insurers and exempts those Title 10 insurers from the applicability of any insurance statutes unless § 10-4-115 is expressly amended to reference the insurance statute to be made applicable to Title 10 insurers. It would be difficult to find a statute more specific than § 10-4-115. To the extent of any irreconcilable conflict between § 27-51-1 and § 10-4-115, I would conclude that § 10-4-115 is the more specific statute. Thus, the rule of statutory construction relied upon by the trial court in granting Dr. Hodurski and the physician assistants' motion for a summary judgment was improperly applied.
I would conclude that the analysis applied by the Alabama Supreme Court in Nielsen III, supra, is binding and persuasive. It must be presumed that when the Legislature enacted the Physician Assistant Act it knew of the statutory requirements for making that Act applicable to BCBS. For whatever reason, it did not comply with those requirements. This Court cannot presume to know the reasons for that noncompliance, and there is no obvious indication of the Legislature's intent in not complying. The Legislature did not expressly repeal the exemption statutes, and it did not expressly amend § 10-4-115 to make the Physician Assistant Act applicable to BCBS. I would also find no repeal by implication. The language of the Physician Assistant Act alone is insufficient to make it applicable to BCBS.
I also disagree with the third basis of the trial court's summary-judgment order in favor of Dr. Hodurski and the physician assistants. In its order, the trial court stated:
"Third, and most importantly, no earlier legislature can bind a later legislature to any requirement that its enactments must be in any particular title of the Code in order to be effective. [BCBS] cannot avoid compliance with the P.A. [Physician Assistant] Statute (i.e., the P.A. Statute says it applies to Title 10 [insurers] like [BCBS]) on the theory that the later legislature which enacted the P.A. Statute had to also go back and amend Alabama Code § 10-4-115. To the extent that [BCBS] argues that the legislature was required to amend § 10-4-115, or to do anything more than say straight-out in the P.A. Statute that the statute applies to Title 10 [insurers]  which the legislature certainly did  then [BCBS's] argument runs afoul of the Alabama Constitution. *966 Under Alabama law it is exceptionally clear that an earlier legislature cannot bind a later legislature, and that a later legislature always has power to overrule an earlier legislature in any and every respect, unless some kind of vested right has intervened (which is not an issue here). Alabama Power v. Citizens of Alabama, 740 So.2d 371 (Ala.1999) (`No legislature can forestall action by a succeeding legislature.'); John E. Ballenger Construction Company v. State Board of Adjustment, 234 Ala. 377, 175 So. 387 (1937) (`One legislature's action cannot bind another.'); Newton v. State, 375 So.2d 1245 (Ala.Crim.App.1979) (`One legislature cannot bind a succeeding legislature or restrict or limit the power of its successors to enact legislation.').
"This is a matter of Alabama constitutional law. The legislative power is vested in the legislature, and each new legislature is a separate session. Ala. Const. §§ 44 and 48. So long as the legislature passes its laws in the form required by the Alabama Constitution (e.g., Ala. Const. § 45), the legislature may pass its laws to amend or replace any title it wishes to amend or replace; and it does not have to do it in Title 10 rather than in Title 27 just because an earlier legislature said so. Whether the legislature in 1997 decided to apply the P.A. Statute to [BCBS] by stating in Title 27 that the P.A. Statute applies to Title 10 [insurers] (which is what the legislature did), or whether the legislature in 1997 had passed the P.A. Statute and made it silent as to whether it applied to [BCBS] yet amended Title 10 to indicate that the P.A. Statute applies to Title 10 [insurers] (which the legislature did not do), is a question for the legislature to decide and not the courts. Under the Alabama Constitution, the legislative power is vested in the legislature (Alabama Constitution § 44) and it is not vested in the courts (in Ala. Const. § 42), and under the Alabama constitutional doctrine of separation of powers it is up to the legislature and not the courts how the legislature does its legislative business, so long as the Alabama Constitution is followed. Alabama Constitution § 42; Ex parte Governor Fob James, 836 So.2d 813 (Ala.2002)."
The Nielsen III Court rejected an argument identical to the one relied upon by the trial court. The Nielsen III Court rejected the same argument presented by the providers here  that the exemption statutes imposed an additional requirement for the enactment of legislation and that such a requirement conflicted with the legislative procedure established by the Alabama Constitution. Nielsen III, 714 So.2d at 297. The Nielsen III Court stated:
"Section 10-4-115 merely requires that if the Legislature is intending to change the provisions of § 10-4-100 [et seq.], then the legislation that makes that change must explicitly show that intention; this requirement is consistent with the requirements of § 45 of the Constitution for providing notice of the purposes of an Act."
714 So.2d at 297.
As discussed above, the Legislature in 1997 did not explicitly express its intention to make the Physician Assistant Act applicable to BCBS. I also disagree with the trial court's application of the recited principles of constitutional law, for a different reason. The trial court's conclusion is premised upon its belief that the exemption statutes somehow improperly restricted the power of the 1997 Legislature and that the 1997 Legislature therefore was empowered to disregard those statutes. The trial court also concluded that the issue how to make the subsequent legislation *967 applicable to BCBS was for the Legislature, not the courts, to decide.
I recognize that the 1997 Legislature, like any other legislature, was vested with the power to, among other things, enact statutes. This is exactly what the 1939 Legislature did when it enacted § 10-4-115 and what the 1997 Legislature did when it enacted the Physician Assistant Act. Both of those legislatures enacted statutes in the form required by the Alabama Constitution.
However, both exemption statutes were existing, validly enacted statutes at the time the 1997 Legislature chose to address, among other things, Title 10 insurers by enacting the Physician Assistant Act. The exemption statutes provided express instructions to the 1997 Legislature as to how to make insurance statutes apply to Title 10 insurers, but the 1997 Legislature chose not to follow those instructions. Had the 1997 Legislature wished to make the Physician Assistant Act applicable to BCBS, it could have followed the instructions provided in § 10-4-115 and § 27-51-1. Alternatively, if the 1997 Legislature believed the exemption statutes improperly limited its power or simply did not wish to follow the mandate of those statutes, it had the power to repeal or amend those statutes. Nothing in the exemption statutes purports to restrain a subsequent legislature's power to make, alter, amend, or repeal laws. This is the power granted to a legislative body. See Freeman v. City of Mobile, 761 So.2d 235 (Ala.1999). In that manner, the 1997 Legislature remained unfettered in the exercise of its legislative power.
However, the power granted to a legislature under the Constitution of Alabama does not include the freedom from judicial review if the legislature disregards an existing statutory mandate and enacts legislation that conflicts with an existing statute. If a legislature acts in that manner, the Court must apply principles of statutory construction to resolve the resulting conflict.
Dr. Hodurski has raised legitimate concerns in support of his position. For example, Dr. Hodurski presented evidence indicating that BCBS is responsible for 70 to 85% of the private health-insurance market in Alabama. Dr. Hodurski also presented evidence indicating that there is a critical shortage of primary care doctors in Alabama, that physician assistants are capable of performing many of the same functions a primary care doctor performs but at a lower cost, and that the Legislature enacted the Physician Assistant Act in order to increase access to health care for the citizens of Alabama. Dr. Hodurski also presented evidence indicating that the majority of the physician assistants who are trained at universities in Alabama seek employment outside of the state because of financial considerations. Finally, Dr. Hodurski produced evidence tending to indicate that BCBS's policy of not reimbursing the costs of services rendered by physician assistants is a factor contributing to this problem. Regardless of whether we agree with Dr. Hodurski's characterization of the evidence and the necessity for mandated coverage for physician assistants, the Legislature is the proper governmental body to address the policy considerations Dr. Hodurski raises. I would reverse the judgment of the trial court and remand the cause for the entry of a judgment in favor of BCBS. Therefore, I dissent.
SEE, J., concurs.
NOTES
[1] In its order, the trial court distinguished § 27-51-1 from the insurance statutes at issue in Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293 (Ala.1998). The statutes in issue in Nielsen did not expressly mention Title 10; they simply provided that they applied to all nonprofit health-care organizations. However, in this case, the statute expressly states that it applies to medical-service organizations created pursuant to Title 10. The trial court relied on this language to distinguish this case from Nielsen.
[2] While Nielsen rejects a challenge to the amendatory procedure on constitutional grounds, that aspect of Nielsen is not relevant to this proceeding. The issue before us can be resolved by ascertaining legislative intent based upon the enactment of changes in the Insurance Code that include an express reference to companies, such as BCBS, operating pursuant to Title 10, Chapter 4, of the Alabama Code.
[3] See § 1-1-14(a) ("The classification and organization of the titles, chapters, articles, divisions, subdivisions and sections of this Code, and the headings thereto, are made for the purpose of convenient reference and orderly arrangement, and no implication, inference or presumption of a legislative construction shall be drawn therefrom.").
[4] Those statutes did not specifically reference Title 10 insurers or BCBS. However, BCBS is, and at all times relevant to those statutes was, a "nonprofit health service organization." So the statutes at issue unequivocally included BCBS.
[5] I discuss this issue in more detail later in this dissenting opinion.
[6] I also note that the Legislature did not include in the Physician Assistant Act general repealer language (e.g., "all laws or parts of laws which conflict with this act ... are repealed"). Thus, I cannot conclude that by enacting the Physician Assistant Act, the Legislature intended to repeal any existing statute or any part of an existing statute that conflicted with the Physician Assistant Act.
[7] BCBS correctly points out that the exemption statutes, §§ 10-4-115 and 27-1-4(2), have been applied to bar other insurance statutes from applying to BCBS. See § 27-46-1 et seq., Ala.Code (the Certified Registered Nurse Anesthetist Act); § 27-1-19, Ala.Code (the Assignment Act); § 27-19A-1 et seq., Ala.Code (the Dental Act); § 27-45-1 et seq. (the Pharmacy Act); and § 27-1-10, Ala.Code (the Chiropractors Act). Federal and state courts have relied upon the exemption statutes in concluding that those acts do not apply to BCBS. See Nielsen I; Nielsen II; Nielsen III, supra; and Hayden v. Blue Cross & Blue Shield, 843 F.Supp. 1427 (M.D.Ala. 1994) (holding that a 1989 insurance statute governing payments to certified registered nurse anesthetists did not apply to BCBS because § 10-4-115 was not amended to so state).