153 So.2d 787

Theophilus Eugene CONNOR et al.

v.

STATE of Alabama on Information of Albert BOUTWELL et al.

6 Div. 992.

Supreme Court of Alabama.

May 23, 1963.

Reid B. Barnes and S. Palmer Keith, Jr., Birmingham, for appellants.

John S. Foster and Graham, Bibb, Wingo & Foster, Birmingham, for appellees.

GOODWYN, Justice.

Appellants, respondents below, were elected in 1961 to a four-year term as the three members of the Birmingham City Commission. Appellees, petitioners below, were elected on April 2, 1963, as Mayor and Councilmen of the City of Birmingham and took their oaths of office as such on April 15, 1963. This quo warranto proceeding, a sequel to the declaratory judgment proceeding in Reid v. City of Birmingham, 274 Ala. 629, 150 So.2d 735, was brought for the purpose of determining when the Mayor and Councilmen take office.

At an election held on November 6, 1962, pursuant to the provisions of Act No. 434, appvd. Sept. 9, 1955, Acts 1955, Vol. II, p. 980, as amended by Act No. 1029, appvd. Sept. 9, 1961, Acts 1961, Vol. II, p. 1615, the voters of Birmingham chose the Mayor-Council form of government for the City in place of the existing Commission form of government. (Another choice on the ballot was the Council-Manager form provided for by Act No. 518, appvd. Sept. 3, 1953, Acts 1953, Vol. I, p. 652, as amended by Act No. 1028, appvd. Sept. 9, 1961, Acts 1961, Vol. II, p. 1612.) Thereupon, pursuant to the provisions of Act No. 452, appvd. Sept. 9, 1955, Acts 1955, Vol. II, p. 1004, as amended by Act No. 1030, appvd. Sept. 9, 1961, Acts 1961, Vol. II, p. 1616, an election of a Mayor and Councilmen was called for March 5, 1963, with a runoff election to be held on April 2, 1963. As already noted, the Mayor and Councilmen were elected at the runoff election on April 2, 1963. Prior to the holding of those elections, a declaratory judg-

ment proceeding was instituted in the circuit court of Jefferson County to determine the validity of the election held on November 6, 1962, which would have the effect also of determining the validity of the elections to be held on March 5 and April 2, 1963. The trial court held the election of November 6, 1962, to be valid and we affirmed. Reid v. City of Birmingham, 274 Ala. 629, 150 So.2d 735, supra. Left unanswered in that case, because not properly presented, was the question of when the newly elected officials take office. As already noted, the proceeding now before us was brought to determine that question. The trial court held the Mayor and Councilmen to be entitled to assume their respective offices, and the three City Commissioners were "prohibited from further use or usurpation or intrusion in purporting to act as Commissioners of the City of Birmingham."

Our conclusion is that the judgment of the trial court is due to be affirmed.

The Commissioners contend that, under the provisions of Act No. 71, appvd. June 18, 1959, Acts 1959, Vol. I, p. 477, they are entitled to hold their offices until October 1, 1965. Act No. 71 provides as follows:

"AN ACT

"Relating to the effective date for change from the mayor-council form of municipal government to the commission form of municipal government where such change has been directed by vote of the municipal electors, and relating to the effective date for change from the commission form of government to the mayor-council form of government where such has been directed by vote of the municipal electors.

"Be It Enacted by the Legislature of Alabama:

"Section 1. That no change from the mayor-council form of municipal government to the commission form of municipal government hereafter directed by vote of the electors of any mu-nicipality in this state shall become effective until October first of the general municipal election year next following the election at which such change is voted. No change from the commission form of municipal government to the mayor-council form of municipal government hereafter directed by vote of the electors of any municipality in this state shall become effective until October first of the general municipal election year next following the election at which such change is voted. The term of any commissioner which might expire before such date is hereby extended until such date when the form of government changes.

"Section 2. This act shall become effective upon its approval by the Governor or its otherwise becoming a law."

The Mayor and Councilmen, on the other hand, contend that Act No. 452, as amended, supra, controls as to the time for their taking office, viz.: On April 15, 1963, the date they took their oaths of office. Act No. 452 provides for their taking office "on the second Monday following the date the election of all nine councilmen is completed," that is, the second Monday following the April 2, 1963, runoff election, viz.: April 15, 1963.

The problem presented is whether it was intended by Act No. 71, a general law, to change the time for taking office provided for in Act No. 452, as amended, a general law of local application. As originally enacted in 1955, Act No. 452 applied to all cities "having a population of more than 200,000 according to the last or any succeeding Federal or municipal census." Birmingham was the only city coming within that population classification. The 1961 amendment of Act No. 452 (Act No. 1030, supra) changed the population classification to "more than 300,000." According to the 1960 Federal census, the City of Mobile had grown to a population of more than 200,000 (but not as much as 300,000), thus

bringing it within the classification prescribed by original Act No. 452. Birmingham is the only city coming within the higher classification prescribed by amendatory Act No. 1030.

Although appellees, in their petition, challenged the constitutionality of Act No. 71, no specific ruling on the question was made by the trial court. Aside from that, no question as to the Act's constitutionality is raised on this appeal.

The holding of the trial court is based on the following statement, taken from the trial court's opinion accompanying its judgment, viz.:

"* * * Do the provisions of Act No. 71, enacted in 1959, in any way supersede or repeal the provisions of Act No. 434 and Act No. 452 of 1955, both of which affect a limited territory although general in form? It should be noted that Act No. 71 contains no general repealer clause. Generally speaking, the repeal of a statute by implication is not favored. Furthermore, a General Law will not repeal by implication a local law, although it be in form a General Law. Acts relating to municipalities on a population basis, applicable at time of passage to a limited territory, are considered local laws (Tucker vs. McLendon, 210 Ala. 562 [90 So. 797]). It is the judgment of this Court that it was not the intent of the Legislature in the enactment of Act No. 71 to repeal or amend any provision of Acts No. 434 and 452. It follows that Act No. 71 in no way extends the term of office of the respondents. * * *"

The foregoing finds support in our cases.

▆ It is an established principle, adhered to in this jurisdiction, that a general law will not repeal by implication a local law—a law affecting a limited territory—although in form a general law, unless there is a manifestation of a different intent to be found in the statute. Thompson v. City of

Birmingham, 217 Ala. 491, 494, 117 So. 406; Tucker v. McLendon, 210 Ala. 562, 565, 98 So. 797, supra; Board of Revenue v. Johnson, 200 Ala. 533, 534, 76 So. 859. And, for purposes of construction, an Act based on a population classification, applicable at the time of passage to a limited area, is to be considered a local law, although in form a general law. Tucker v. McLendon, supra; Board of Revenue v. Johnson, supra.

There being no express repeal of the provisions of Act No. 452, the question is whether Act No. 71 has impliedly repealed the provisions of Act No. 452 prescribing the time when the newly elected Mayor and Councilmen take office.

▆ In 50 Am.Jur., Statutes, §§ 561 and 564, are the following statements of principles applicable to the case before us, viz.:

"§ 561.—Repeal by Implication.—It has been broadly stated that the rule as to repeals implied from repugnancy of provisions applies as well between a general and a special or local act as between two general ones. As a general rule, however, general or broad statutory provisions do not control, modify, limit, affect, or interfere. with special or specific provisions. To the contrary, to the extent of any irreconcilable conflict, the special or specific provision modifies, qualifies, limits, restricts, excludes, supersedes, controls, and prevails over the general or broad provision, which accordingly must yield to the special or specific provision, and operate only upon such cases as are not included therein. The special or specific act and the general or broad law stand together, the one as the law of a particular case, and the other as the general rule. Hence, the special or specific provision is often referred to as an exception to the general or broad provision. These rules prevail where there is a repugnancy between the two acts, and no manifesta-

tion of a different intent to be found in the statute."

"§ 564.—Repeal of Special or Specific by General or Broad Statute.— There is no rule which prohibits the repeal by implication of a special or specific act by a general or broad one. The question is always one of legislative intention, and the special or specific act must yield to the later general or broad act, where there is a manifest legislative intent that the general act shall be of universal application notwithstanding the prior special or specific act. It is, however, equally true that the policy against implied repeals has peculiar and special force when the conflicting provisions, which are thought to work a repeal, are contained in a special or specific act and a later general or broad act. In such case, there is a presumption that the general or broad law was not designed to repeal the special or specific act, but that the special or specific act was intended to remain in force as an exception to the general or broad act, and there is a tendency to hold that where there are two acts, one special or specific act which certainly includes the matter in question, and the other a general act which standing alone would include the same matter so that the provisions of the two conflict, the special or specific act must be given the effect of establishing an exception to the general or broad act. Hence, it is a canon of statutory construction that a later statute general in its terms and not expressly repealing a prior special or specific statute, will be considered as not intended to affect the special or specific provisions of the earlier statute, unless the intention to effect the repeal is clearly manifested or unavoidably implied by the irreconcilability of the continued operation of both, or unless there is something in the general law or in the course of legislation upon its subject matter that makes it manifest that the legislature contemplated and intended a repeal. Unless there is a plain indication of an intent that the general act shall repeal the special act, the special act will continue to have effect, and the general words with which it conflicts will be restrained and modified accordingly, so that the two are to be deemed to stand together, one as the general law of the land, and the other as the law of the particular case."

■■ From 82 C.J.S. Statutes §§ 298b and 298c is the following:

"b. Particular Local Acts

*　　*　　*　　*　　*　　*

"When the provisions of a general law, applicable to the entire state, are repugnant to the provisions of a previously enacted special law, applicable in a particular locality only, the passage of such general law does not operate to repeal the special law, either in whole or in part, unless such repeal is provided for by express words, or arises by necessary implication. * * *

"*Acts relating to municipal corporations.* The maxim, Generalia specialibus non derogant, is especially applicable to cases where general statutes are argued to overrule the provisions of special charters granted to municipal corporations, or special acts passed for their benefit. * * *

*　　*　　*　　*　　*　　*

"c. Acts Relating to Particular Subjects

*　　*　　*　　*　　*　　*

· "*Public officers.* A special or local act relating to the election, term of office, or compensation, of certain officers, or officers of a certain political corporation or subdivision, is not repealed or affected by a subsequent general act relating to such officers, unless the two acts are in irreconcilable conflict, or it is intended by the subsequent general law to establish a system of laws which shall be uniform in their application throughout the state."

From Sutherland, Statutory Construction, 3d Ed., Vol. 1, § 2021, p. 486, is the following:

" * * * [W]here the later general statute does not propose an irreconcilable conflict, the prior special statute will be construed as remaining in effect as a qualification of or exception to the general law.

"However, since there is no rule of law to prevent the repeal of a special by a later general statute, prior special or local statutes may be repealed by implication from the enactment of a later general statute where the legislative intent to effectuate a repeal is unequivocally expressed. * * * "

The foregoing principles find support in our cases, viz.: Personnel Board of Mobile County v. City of Mobile, 264 Ala. 56, 60, 84 So.2d 365; Shepherd v. Clements, 224 Ala. 1, 2, 141 So. 255; Ex parte Jones, 212 Ala. 259, 261, 102 So. 234; Herring v. Griffin, 211 Ala. 225, 226, 100 So. 202; Tucker v. McLendon, 210 Ala. 562, 564, 565, 98 So. 797, supra; Ex parte Central Iron & Coal Co., 209 Ala. 22, 25, 95 So. 472; City Council of Montgomery v. National Building and Loan Association, 108 Ala. 336, 18 So. 816; Iverson v. State, 52 Ala. 170, 172; Magruder v. State, 40 Ala. 347, 349; Hall v. City of Birmingham, 20 Ala.App. 437, 438, 102 So. 732.

In State ex rel. Brown v. Township Committee of the Township of Mullica, 48 N. J.L. 447, 448, 4 A. 427, 428, it is said:

"It has been well settled in this state that a general law on a subject-matter, which has been provided for in certain localities by special law, will not, although it contain a general repeal of acts inconsistent with it, annul or alter the special provisions in those localities. * , * * But if the general law expressly repeals the special laws, or shows by implication a manifest intent to supersede their provisions, the latter must yield."

In Wells v. Price, 183 Md. 443, 454, 37 A.2d 888, 893, it was held that a provision of the Baltimore city charter prescribing six months as the maximum period of confinement for non-payment of fines was not repealed by implication by a subsequent amendment to the statewide law prescribing three months as the maximum period. The court, in referring to the trial court's opinion, stated:

"The conclusion there was that the repeal in question was accomplished and that, consequently, the charter provision is no longer operative. With this conclusion we cannot agree, for it is unsupported by both the common-law rule that a local statute shall not be held repealed except by clearly indicated purpose on the part of the legislature (Alexander v. Mayor, etc., of Baltimore, 53 Md. 100, 104; State v. Falkenham, 73 Md. 463, 21 A. 370); and by the fundamental rule of statutory construction that, in determining the legislative intent, the presumption is against repeal by implication."

In Shepherd v. Clements, 224 Ala. 1, 2, 141 So. 255, 256, supra, is the following apt statement:

"We recognize the rule that the presumption is a general act does not repeal a local statute, but, as has been well said, 'such presumption must give way to a plain manifestation of a different legislative intent.' The question is one of intention which may be made to appear by the subject-matter, with which the general act is concerned, by the surrounding circumstances, by other legislation on the same subject, and the purpose to be accomplished. Thus, where the clear general intent of the Legislature is to establish a uniform system throughout the state, the presumption must be that local acts are intended to be repealed. 36 Cyc. 1089, 1090."

Appellants agree that the foregoing principles have application here, but take the

**236**

position that Act No. 71 discloses a manifest legislative intent to establish a uniform system throughout the state whereby elected municipal officials may not be removed from office prior to expiration of their terms by changing the form of the city's government. However, it seems to us that Act No. 71 was not intended to establish such uniform system for the reason, aside from any other consideration, that said Act deals only with the Commission and Mayor-Council forms of government, while the voters of Birmingham, under the provisions of Acts Nos. 434, 452, and 518, had the choice not only between those two forms but also the Council-Manager form. It seems more reasonable to us that if the legislature had intended for Act No. 71 to apply to Birmingham in effectuating a uniform system throughout the state, it would also have been made to apply when the Council-Manager form is involved in a change in the form of government. A manifest intent is one which is clearly evident. We do not think Act No. 71 fits that meaning.

■ As we view it, Act No. 71 does not present "an irreconcilable conflict" with Act No. 452 with respect to the time of taking office. Since Act No. 452 is to be treated as a local or special law, applicable only to Birmingham, there appears no reason why it cannot continue to be so applicable, with the provisions of Act No. 71, a general law, applying to other appropriate situations. We hold that Act No. 452 should "be construed as remaining in effect as a qualification of or exception to the general law" embraced in Act No. 71. Sutherland, Statutory Construction, 3d Ed., Vol. 1, § 2021, p. 486, supra; Ex parte Jones, 212 Ala. 259, 261, 102 So. 234, supra; Herring v. Griffin, 211 Ala. 225, 226, 100 So. 202, supra.

The judgment appealed from is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.