BEATTY, Justice.
The United States District Court for the Southern District of Alabama, under Rule 18, A.R.A.P., has requested this Court to answer certain questions of Alabama law deemed determinative of an action before it. We quote from that court's order:
“This case was brought by plaintiffs to redress alleged constitutional violations by the defendants in their conduct of their official duties as members of the Mobile County Board of Registrars. The defendants are currently engaged in the process of reidentifying voters in Mobile County. See Ala. Code § 17-4-180 to 17-4-191 (Supp.1985). The plaintiffs contend that defendants are not obeying the dictates of 1984 Ala. Acts No. 389, codified at sections 17-4-180 to 17-4-191, supra. Defendants contend that their actions are authorized by 1965 Ala. Acts No. 36 (First Special Session). The plaintiffs reply that Act No. 36 is unconstitutional under section 106 of the Alabama constitution, but that even if it is valid it was repealed by the passage of Act No. 389 in 1984.
“The plaintiffs contend that Act No. 36 is unconstitutional because it is a local *449 law that was not enacted in accordance with the notice requirements of section 106. Defendants contend that Act No. 36, which applies ‘to all counties having a population of 300,000 to 500,000,’ Act No. 36, § 1, is a ‘general law of local application’ not covered by section 106. The plaintiffs rely on statements in Peddycoart v. City of Birmingham, 354 So.2d 808 (Ala.1978). In Peddycoart the Alabama Supreme Court interpreted section 110 of the Alabama Constitution which defines ‘local law.’ The Court stated:
“ ‘§ 110 of the Alabama Constitution mandates the definition of a local law. It is one “which applies to any political subdivision or subdivisions of the state less than the whole; ...” (emphasis added). Applies when? Obviously, when it becomes law! If, when it becomes law it applies only to a subdivision of the state, it is a local law. That is the clear meaning of the language employed by our constitutional framers. In the face of this plain language, to conclude that the application of a law to less than the entire state makes no difference when a futuristic population classification is employed is to engage in sophistic reasoning. We reject such reasoning in favor of the clear definition of a local act which is contained in the Constitution. A population classification cannot be utilized in the future to avoid the definition of a local act.’
“354 So.2d at 814 (latter emphasis added). It is not clear from this passage whether every ‘general law of local application’ is affected, or only those enacted in the future. Also, the Alabama Supreme Court was concerned with the interpretation of section 105 of the Alabama Constitution, forbidding the passage of a local law in any case provided for by a general law. It is therefore unclear whether Peddycoart applies to invalidate Act No. 36. As a determination of this state law issue, or the issue of repeal of Act No. 36, is essential before any federal constitutional issues can be properly framed, the Court will certify the questions to the Alabama Supreme Court.
“Pursuant to Ala.R.App.P. 18(c), the Court finds that the questions .of law stated below are determinative of this cause and that there are no clear controlling precedents in the decisions of the Supreme Court of Alabama. It is therefore the Order of the Court that the Clerk shall certify the following questions to the Alabama Supreme Court:
“(1) Did 1984 Ala. Acts No. 389 repeal 1965 Ala. Acts No. 36 (First Special Session)?
“(2) Does 1965 Ala. Acts No. 36 (First Special Session) violate section 106 of the Constitution of the State of Alabama because it is a local law within the meaning of section 110 of the Constitution?”
The Court will proceed to answer the second question first.
Section 106 of the Constitution of 1901 provides, in pertinent part:
“No ... local law shall be passed on any subject not enumerated in section 104 of this Constitution ... unless notice of the intention to apply therefor shall have been published ... in the county ... where the matter or thing to be affected may be situated....”
Section 110 of the Constitution of 1901 was interpreted literally by this Court in Peddycoart v. City of Birmingham, 354 So.2d 808 (Ala.1978), as defining a local law to be one “ ‘which applies to any political subdivision or subdivisions of the state less than the whole ’ ... when it becomes law!” Section 110 was amended by Amendment No. 375, ratified November 20, 1978, to define a local law as one “which is not a general law or a special or private law.” A general law was defined therein as “a law which in its terms and effect applies either to the whole state, or to one or more municipalities of the state less than the whole in a class.”
Local laws enacted as “general acts of local application,” see Peddycoart, supra, were the subject of a subsequent amendment, Amendment No. 389, ratified Novem *450 ber 19, 1980. That amendment rendered any such statutes, if otherwise valid, valid if enacted before January 13, 1978 (the date of the Peddycoart decision), but declared that such statutes would “forever remain” applicable to their original counties and municipalities, despite population changes.
It would serve no useful purpose to quote the provisions of Act No. 36 which make it a local law. Indeed, there is no dispute upon its terms. It is clearly a “bracket bill,” having a population classification of 300,000 to 500,000, and it is conceded that it was not advertised as required under the notice requirements of Section 106.
Nevertheless, Amendment No. 389 specifically legitimated local acts, such as Act No. 36, notwithstanding the failure to meet the notice requirements. Consequently, we conclude that Act No. 36 is not unconstitutional under Section 106 of the Constitution of 1901.
We answer Question No. 2 “No.”
Did Act No. 389, which became effective on May 21, 1984, repeal Act No. 36, which became effective on March 16, 1965?
The positions of the parties are sharply divided on this question. We believe that the basic issue is whether Act No. 36 was repealed by implication by Act No. 389.
It is helpful to compare the substantive terms of each statute:
Act No. 36 (1965)
Section 1
Applicable to all counties having population . of 300,000 to 500,000.
Section 2
All registered voters must reiden-tify before February 2, 1967, except those registered as recently as February 2, 1964.
Section 3
Voters reidentify (a) by appearing in person before Board of Registrars in county courthouse and completing questionnaire substantially like one provided in Act; (b) active duty personnel in armed forces and their spouses may request questionnaire; (c) permanently disabled confined in facility or bed may request questionnaire.
Section 4
Sets out form questionnaire inquiring of name, residence, place of employment, birthdate, voting place, any felony, etc., convictions, any restoration of civil rights.
*451 Section 5
Within one month after February 1, 1967, Board of Registrars shall present to Probate Judge list of names of those reidentified, for publication in local newspaper with warning of being dropped unless those not reidentified do reidentify within 60 days.
Section 6
After 60 days, names of those not reidentified removed from list. Those dropped may appear before Board of Registrars at regularly scheduled meetings and complete reidentification form to have name restored.
Section 7
County governing body to provide Board of Registrars and Probate Judge with supplies, equipment, ana clerical help necessary for reidentifying, and pay for advertising.
Section 8
Board of Registrars to be in session continuously during this reidentification period beginning with passage of Act, and paid by county governing board for each day served between registration periods. Reidentification to open and close at beginning and ending of dates set forth of each tenth (10th) year thereafter.
*450 Act No. 389 (1984)
Section 1
Board of Registrars of each county directed to purge names of electors where these are deceased or have otherwise become disqualified from voting in the county-
Section 2
Board of Registrars to meet in August for purpose of purging registration lists of the names of those who have failed to reidentify in manner prescribed.
Section 3
Each voter on removal list shall reidentify by appearing in person before registrar or deputy registrar, or probate judge or clerk in probate office; members of armed forces, persons employed outside United States, students away at college, their spouses and children, may reidentify by mail; Board of Registrars shall notify eligible persons by mail as to how they can reidentify.
Section 4
Names to be struck to be listed by precinct in alphabetical order ana published in newspaper once in each of two consecutive weeks prior to August each year.
*451 Section 5
Board not to remove name of any elector known to board to be legal resident of county and not known to have disqualification.
Section 6
Record of stricken names must show reason stricken. Stricken electors need only reidentify to be placed again on list of electors.
Section 7
To restore name, stricken elector may submit affidavit or appear in person before registrar or deputy registrar, or appear at probate office, certifying that he or she is a bona fide qualified voter of county; qualified elector can be reidentified on election day; Board of Registrars not restricted from purging registration lists under § 17-4-132.
Section 8
Board of Registrars shall maintain a permanent list of all qualified electors by precinct and by race.
Section 9
Each member of the Board of Registrars shall receive $35.00 per day for each day’s attendance at special sessions of board. Members receive one per diem allowance for one day’s service. Provides for replacement in event of vacancies.
Section 10
Board of Registrars, under § 17-4-157, shall appoint at least one deputy registrar in each county for four-year term.
*452 Section II
County Commission in each county required to furnish supplies, equipment and newspaper advertisements necessary.
The question of whether the enactment of a general law repeals a pre-exist-ing local law is at bottom one which depends upon the legislature’s intent, as determined from the language used in the general law. Champion v. McLean, 266 Ala. 103, 95 So.2d 82 (1957). In a recent case dealing with this question, Day v. Morgan County Commission, 487 So.2d 856 (Ala.1986), this Court applied principles of earlier cases, e.g., Connor v. State, 275 Ala. 230, 153 So.2d 787 (1963), and expressed in Sutherland, Statutes and Statutory Construction (Sands 4th ed. 1985) § 23.15, at 245:
“The enactment of a general law broad enough in its scope and application to cover the field of operation of a special or local statute will generally not repeal a statute which limits its operation to a particular phase of the subject covered by the general law_ An implied repeal of prior statutes will be restricted to statutes of the same general nature, since the legislature is presumed to have known of the existence of prior special or particular legislation, and to have contemplated only a general treatment of the subject matter by the general enactment. Therefore, where the later general statute does not present an irreconcilable conflict the prior special statute will be construed as remaining in effect as a qualification of or exception to the general law.
“However, since there is no rule of law to prevent the repeal of a special by a later general statute, prior special or local statutes may be repealed by implication from the enactment of a later general statute where the legislative intent to effectuate a repeal is unequivocally expressed. A repeal will also result by implication when a comprehensive revision of a particular subject is promulgated, or upon the predication of a statewide system of administration to replace previous regulation by localities.” (Footnotes omitted.)
To the same effect is this Court’s observation on repeals by implication contained in Connor, supra, 275 Ala. at 234, 153 So.2d at 791-92, quoting from 50 Am.Jur. Statutes, § 564:
“There is no rule which prohibits the repeal by implication of a special or specific act by a general or broad one. The question is always one of legislative intention, and the special or specific act must yield to the later general or broad act, where there is a manifest legislative intent that the general act shall be of universal application notwithstanding the prior special or specific act. It is, however, equally true that the policy against implied repeals has peculiar and special force when the conflicting provisions, which are thought to work a repeal, are contained in a special or specific act and a later general or broad act. In such case, there is a presumption that the general or broad law was not designed to repeal the special or specific act, but that the special or specific act was intended to remain in force as an exception to the general or broad act, and there is a tendency to hold that where there are two acts, one special or specific act which certainly includes the matter in question, and the other a general act which standing alone would include the same matter so that the provisions of the two conflict, the special or specific act must be given the effect of establishing an exception to the general or broad act. Hence, it is a canon of statutory construction that a later statute general in its terms and not expressly repealing a prior special or specific statute, will be considered as not intended to affect the special or specific provisions of the earlier statute, unless the intention to effect the repeal is clearly manifested or unavoidably implied by *453 the irreconcilability of the continued operation of both, or unless there is something in the general law or in the course of legislation upon its subject matter that makes it manifest that the legislature contemplated and intended a repeal. Unless there is a plain indication of an intent that the general act shall repeal the special act, the special act will continue to have effect, and the general words with which it conflicts will be restrained and modified accordingly, so that the two are to be deemed to stand together, one as the general law of the land, and the other as the law of the particular case.”
Applying these principles to the statutes before us, it is clear that Act No. 389 is directly repugnant to Act No. 36 and, therefore, that Act No. 36 was repealed by Act No. 389.
For one thing, both acts have as their purpose the purging of the elector lists and the requirement of reidentification. Act No. 36 requires that all registered voters in Mobile County present themselves to the Board of Registrars during the reidentification period by February 1, every tenth year, or currently by February 1, 1987. Exceptions are made for military personnel and those permanently disabled. Act No. 389, in contradistinction, requires purging the list “where there is reasonable evidence that these electors are deceased or have otherwise become disqualified.” Under Act No. 36, then, a voter must reidentify to remain on the list of qualified electors, whereas under Act No. 389, a voter need reidentify only after his name has been purged because of reasonable evidence that he has become ineligible. Thus, not only did Act No. 389 drastically change the standard under which purging was to occur, but it also changed completely the voter’s requirement for reidentification.
Additionally, Act No. 36 requires the Board of Registrars to remove the name of every voter who has not personally reiden-tified within the prescribed period. Act No. 389, on the other hand, prohibits the Board from removing the name of any voter “known by any member of said board, or made known to the said board by another qualified elector, or duly representative of the elector whose name is to be stricken, to be a legal resident of the county not known to be suffering from any disqualification.” It continues: “In purging the list of qualified electors, the board of registrars shall remove only the names of those persons who have not reidentified in the manner prescribed herein.”
These differences in the two acts are substantial, and prevent reconciliation of their terms in the fields of purging of the voter lists and reidentification by purged voters. Accordingly, it must be presumed that the legislature intended by Act No. 389 to repeal Act No. 36, so as not to have a dual and conflicting system on the subject, and “the later statute prevails as the last expression of the legislative will.” Fletcher v. Tuscaloosa Federal Savings & Loan Ass’n, 294 Ala. 173, 177, 314 So.2d 51 (1975).
The answer to Question No. 1, therefore, is “Yes.”
QUESTIONS ANSWERED.
All the Justices concur.