The Pittsburg Midway Coal Mining Company ("the Company") appeals from a judgment of the Tuscaloosa Circuit Court dismissing the Company's action against the Tuscaloosa County Special Tax Board ("the Tax Board") and Tuscaloosa County. We reverse and remand.
 Facts and Procedural History
This appeal stems from an attempt to determine which of two counties — Fayette County or Tuscaloosa County — is entitled to the sales or use taxes on some of the equipment, supplies, and mine fixtures the Company used in its mining operations in those counties from 1999 to 2005.[1] The Company alleges that, in what it contends was good faith and based on a reasonable interpretation of the law and on previous audits and advice by the Alabama Department of Revenue, it paid the taxes for that time period to Fayette County. The Tax Board claims, however, that a large portion of those taxes should have been paid to it instead.
On July 11, 2005, the Tax Board issued a "preliminary assessment" of the taxes it claimed that the Company owed for the period June 1, 1999, through April 30, 2005 ("the audit period"). The preliminary assessment sought taxes, interest, and penalties for the audit period. The preliminary assessment stated:
 "[I]f you believe these additional amounts are not due to the [Tax Board], you have the right to contest this preliminary tax assessment to Tuscaloosa County's Administrative Appeals Committee discussed in the Taxpayer's [sic] Bill of Rights
(copy enclosed).
 "Please take notice of the fact that you have Thirty (30) DAYS after receipt of this letter within which to file your formal written appeal with the Tuscaloosa County Special Tax Board's Manager. Please also be advised that if a formal protest is not filed within this deadline, the unpaid balance of these taxes, penalties, and interest will become a final assessment against your business. Once the assessment becomes a final assessment you have Thirty (30) days to either file an appeal with the Tax Boards' [sic] Appeals Officer or appeal to Circuit Court. After thirty days has expired from the date of the Final Assessment, the assessment will become final and entered as a judgment.
 "After this deadline, if no appeal has been timely filed by you or your representative, enforcement and other collection procedures will then become applicable *Page 252 
in this matter for any unpaid amounts."
(Boldface type in original.)
A brochure entitled "Taxpayers' Bill of Rights" was included with the preliminary assessment. The name "Tuscaloosa County Special Tax Board, Tuscaloosa, Alabama" appears at the top of the cover page of the brochure. After describing the audit procedure, the brochure states:
 "After your audit, we will take one of the following three actions:
 ". . . .
 "2. issue a `preliminary assessment' which will state any additional tax, penalty, and interest we believe you owe
 . . . .
 "If you do not agree with the Department's[2]
decision in your case, you may appeal this decision by filing a written petition requesting a review hearing on your case. The petition for review must be filed within thirty (30) days of the issuance date of the preliminary assessment. The petition may be through a written letter addressed to the Department outlining the amount you are protesting and the reason.
 "The Department will review your petition and schedule a conference if requested or otherwise necessary. During this conference you will have the opportunity to discuss your case with designated officers from the division whose actions you are contesting. This conference will allow both you and the Department to present each side of the issue and to review any additional information being presented.
 "Based on the outcome of this conference, the Department will either cancel, change, or affirm its previous action. If you do not timely file your petition for review or the Department determines from the conference that the preliminary assessment is due to be upheld in whole or in part, the Department will enter a final assessment.
 "If a final assessment is entered, you will be notified in writing and advised that you may appeal to circuit court or the Department's appeals representative."
On August 10, 2005, the Company filed a petition with the Tax Board seeking a review of the preliminary assessment; the petition asked for hearing before the Tax Board. Because the Company contended that it had already paid taxes to Fayette County on most of the items that were the subject of the Tax Board's preliminary assessment, the Company also filed a petition on August 18, 2005, with Fayette County under § 40-23-2.1, Ala. Code 1975, which the parties refer to as the "anti-whipsaw" statute. The Fayette County petition sought a refund for the taxes the Company had paid during the audit period on the items included in the Tax Board's preliminary assessment.
The Tax Board revised its preliminary assessment on August 30, 2005; the revised preliminary assessment claimed an increased amount of taxes, interest, and penalties. According to the complaint, representatives of the Company informally met with representatives of the Tax Board on September 9, 2005, at the law offices of *Page 253 
the Tax Board's then counsel. On September 29, 2005, the Company filed a petition for a review of the revised preliminary assessment.
According to the complaint, the Company made several requests for a hearing before the Tax Board, but the Tax Board did not grant those requests. The Tax Board issued a "final assessment" on March 28, 2006, and the complaint alleges that the Tax Board did so without prior notice or explanation to the Company.
The August 30, 2005, assessment sought a total of $1,200,412.27 in taxes, penalties, and interest, but the March 28, 2006, assessment sought $521,576.69 in taxes, $169,924.71 in interest, and $57,695.71 in penalties, for a total of $749,197.11.
The March 28, 2006, final assessment stated:
 "The purpose of this report is to give your business the opportunity to pay these additional local taxes. The taxpayer has Thirty (30) days
to either file an appeal with the Tax Boards' [sic] Appeals Officer or appeal to Circuit Court. After thirty days has expired from the date of this Final Assessment, [t]he assessment will become final and entered as a judgment.
 "After this deadline, if no appeal has been timely filed by you or your representative, enforcement and other collection procedures will then become applicable in this matter for any unpaid amounts."
(Boldface type in original.)
On April 27, 2006, the Company delivered a five-page "notice of appeal of final assessment" to the Tax Board, along with attached exhibits. The Company addressed the "notice of appeal" to the "appeals officer" of the Tax Board.
On May 31, 2006, the Tax Board, contrary to its earlier position, notified the Company that it did not have an administrative-appeal process. The Tax Board's May 31 letter stated:
 "Please take note that there is currently no Appeals Officer employed or utilized by the Tuscaloosa County Special Tax Board. Moreover, there is no mechanism for the hearing of any administrative appeals by the board or such an officer on account of the special provisions of the local act creating and governing the Board. See Act 56, 1953 Ala. Acts, Vol. I, pgs. 76-86, as amended by Act 94-554, 1994 Ala. Acts, Vol. 2, pgs. 1010-21.
 "These Acts provide that the sole avenue for appealing an assessment lies with the Tuscaloosa County Circuit Court. (See Section 10 of the Act, as amended.) Please direct any appeals you wish to file to that court. No further action will be taken on your filing with the Board."
On June 30, 2006, the Company filed a complaint in the Tuscaloosa Circuit Court. The complaint sought a judgment declaring that the Tax Board, in issuing the final assessment and in "reinterpreting" its appeal procedures, violated various Alabama statutes as well as the Company's constitutional due-process rights. In the event that the court held that the Tax Board's actions were constitutional, the complaint also gave notice of appeal from the Tax Board's final assessment.
The Tax Board filed a motion to dismiss. The Tax Board argued that the local act that created the Tax Board provides an exclusive appeal process, and that process, the Tax Board contended, required the Company to file an appeal in the Tuscaloosa Circuit Court within 30 days of the March 28, 2006, final assessment. Because the Company had not filed an appeal within that time, the Tax Board argued that the action filed June 30, 2006, was an *Page 254 
untimely appeal. The Company filed a brief in opposition to the Tax Board's motion.
Following a hearing, the trial court agreed with the Tax Board and dismissed the action. The Company timely appealed to this Court.
 Standard of Review
"Appellate review of a ruling on a question of law is de novo."Ex parte Forrester, 914 So.2d 855, 858 (Ala. 2005). "Ade novo review is a review without any assumption of correctness." Kenworth of Dothan, Inc. v. Bruner-WellsTrucking, Inc., 745 So.2d 271, 273 (Ala. 1999).
The trial court dismissed this case on a motion to dismiss grounded on Rule 12(b)(6), Ala. R. Civ. P.
 "`"The standard of review of the grant of a motion to dismiss . . . was set out in Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993):
 "`"`On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review . . . is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. We note that a . . . dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'"
 "`Jacks v. Madison County, 741 So.2d 429, 430
(Ala.Civ.App. 1999) (citations omitted). In addition, "[m]otions to dismiss are rarely appropriate in declaratory judgment proceedings. Such a motion does, however, serve one purpose, that of determining whether the [complaint] states the substance of a bonafide justiciable controversy which should be settled." Wallace v. Burleson, 361 So.2d 554, 555 (Ala. 1978) (citation omitted).'"
Waite v. Waite, 959 So.2d 610, 614 (Ala. 2006) (quoting Helms v. Barbour County, 914 So.2d 825,828-29 (Ala. 2005)).
 Discussion
The legislature created the Tax Board in 1953. See
Act No. 56, Ala. Acts 1953, as amended by Act No. 94-654, Ala. Acts 1994, and Act No. 96-554, Ala. Acts 1996 ("the local act"). The Tax Board is a five-member board; Tuscaloosa County, the City of Tuscaloosa, the Tuscaloosa County Board of Education, the City of Tuscaloosa Board of Education, and the Druid City Hospital Board each elect one member of that board. Local act §§ 1, 9.
Section 10 of the local act contains a specific procedure for an appeal from a final assessment issued by the Tax Board. As amended, § 10 provides:
 "Section 10. Appeals from Assessments. Whenever any taxpayer who has duly appeared and protested a final assessment made by the tax board is dissatisfied with the assessment finally made, he may appeal from said final assessment to the Circuit Court of the county,[3] sitting in equity, by filing notices of appeals with the secretary of the tax board and with the register of said court within thirty (30) days from the date of said final assessment, and in addition thereto by giving bond conditioned to pay all costs, such bond to be filed with and approved by the register *Page 255 
of said court. All provisions of Chapter 2A of Title 40 of the Code of Alabama 1975, as amended from time to time, pertaining to payment of an assessment unless a supersedeas bond shall be filed and approved, the burden of proof, and the procedure to be followed in appeals from the judgment of the said court, shall be applicable to appeals from final assessments made hereunder, and the tax board shall have with respect to such appeals all the rights conferred on and the functions assigned to the Department of Revenue by said Chapter 2A."
In dismissing the Company's action, the trial court concluded that "the [Company's] exclusive remedy to challenge the final assessment entered against it by the Tuscaloosa County Special Tax Board lies under the Local Act creating and governing the [Tax] Board." The trial court construed § 10 as permitting only one procedure by which the Company could challenge the March 28, 2006, assessment: the filing of a notice of appeal in the Tuscaloosa Circuit Court within 30 days of that assessment. Because the Company did not file a notice of appeal within that time, the trial court held that the notice of appeal the Company did file was untimely.
The trial court also dismissed the Company's declaratory-judgment action, which was based on various Alabama statutes as well as constitutional due-process protections. The trial court held that that action was "an impermissible substitute for an appeal" from the March 28, 2006, final assessment.
The Company, however, argues that after the Tax Board issued the final assessment on March 28, 2006, the Company was entitled to an administrative appeal before the Tax Board. The Company further contends that the 30-day period for filing a notice of appeal under § 10 of the local act did not begin to run until such an administrative appeal had been exhausted. The Company offers two arguments in support of that position.
First, the Company argues that the plain language of § 10 of the local act requires the Tax Board to provide some form of an administrative hearing following issuance of a final assessment. Noting that § 10 authorizes an appeal to the Tuscaloosa Circuit Court "[w]henever any tax-payer who hasduly appeared and protested a final assessment made by the tax board is dissatisfied with assessment finallymade" (emphasis added), the Company argues that the final assessment does not become "finally made" until the Tax Board (1) holds a hearing after issuance of the final assessment and (2) renders a final decision after that hearing. We disagree.
Section 10 of the local act states that the notice of appeal must be filed "within thirty (30) days from the date of said final assessment." The Company does not dispute that the March 28, 2006, assessment was a "final assessment." Thus, according to § 10 of the local act, the Company was required to do the following within 30 days of March 28, 2006: (1) "duly appear[] and protest[] [the] final assessment" before the Tax Board and (2) file a notice of appeal in the Tuscaloosa Circuit Court.
However, the Company also argues that the Local Tax Simplification Act of 1998, Act No. 98-192, Ala. Acts 1998 ("the LTSA"), superseded the local act and required the Tax Board to offer an administrative-appeal procedure like that set forth in the Alabama Taxpayers' Bill of Rights, §§ 40-2A-1
to -18, Ala. Code 1975 ("the TBOR"). We agree.
The purpose of the TBOR is stated in § 40-2A-2(1), Ala. Code 1975, entitled "Legislative Intent": *Page 256 
 "a. The legislative intent of this chapter is to provide equitable and uniform procedures for the operation of the department and for all taxpayers when dealing with the department. This chapter is intended as a minimum procedural code and the department may grant or adopt additional procedures not inconsistent with this chapter. This chapter shall be liberally construed to allow substantial justice.
 "b. The provisions of this chapter shall be complementary and in addition to all other provisions of law. In the event of any conflict between the provisions of this chapter and those of any other specific statutory provisions contained in other chapters of this title, or of any other title, it is hereby declared to be the legislative intent that, to the extent such other specific provisions are inconsistent with or different from the provisions of this chapter, the provisions of this chapter shall prevail."
In General Motors Acceptance Corp. v. City of Red Bay,894 So.2d 650 (Ala. 2004), this Court summarized some of the procedures outlined in the TBOR:
 "The TBOR prescribes uniform procedures that must be followed in assessing and collecting taxes. § 40-2A-1 and -2. Pursuant to the TBOR, the State Department of Revenue ('the Department') is required to provide a taxpayer with notice of any planned audit of the taxpayer's books and records; with a statement of the taxpayer's procedural rights, including the right to an administrative review of a preliminary assessment; and with a written description of the grounds for any claimed underpayment or nonpayment of a tax. § 40-2A-4. . . . If the parties are unable to resolve their differences and the Department determines that the assessment is valid, it must enter a final assessment. The taxpayer may then appeal the assessment to the administrative law division of the Department (or to a similar administrative agency in the event the dispute involves local taxes levied by a municipality or county not administered by the Department) or to the circuit court in the county where the tax-payer resides. § 40-2A-7."
894 So.2d at 653 (emphasis added).
In particular, § 40-2A-7(b)(5), Ala. Code 1975, entitled "Procedure for Appeal from Final Assessment," provides, in relevant part:
 "a. A taxpayer may appeal from any final assessment entered by the department by filing a notice of appeal with the Administrative Law Division within 30 days from the date of entry of the final assessment, and the appeal, if timely filed, shall proceed as herein provided for appeals to the Administrative Law Division.
 "b.1. In lieu of the appeal under paragraph a., at the option of the tax-payer, the taxpayer may appeal from any final assessment to the Circuit Court of Montgomery County, Alabama, or to the circuit court of the county in which the taxpayer resides or has a principal place of business in Alabama, as appropriate, by filing notice of appeal within 30 days from the date of entry of the final assessment with both the secretary of the department and the clerk of the circuit court in which the appeal is filed."
In the event a taxpayer files an administrative appeal, § 40-2A-9(g) of the TBOR gives the taxpayer 30 days after the final order is issued in the administrative appeal in which to file a notice of appeal to the appropriate circuit court. Thus, the TBOR — unlike § 10 of the local act — offers the taxpayer the option of filing an administrative appeal and obtaining an administrative *Page 257 
ruling before the 30-day period for filing a notice of appeal in the appropriate circuit court begins to run.
By its terms the TBOR applies only to the Department of Revenue and not to a local taxing authority like the Tax Board. RedBay, 894 So.2d at 653. Even so, it is undisputed in this case that the Tax Board represented to the Company more than once that the Tax Board had an administrative-appeal process essentially identical to the appeal process the TBOR requires in § 40-2A-7(b)(5) and § 40-2A-9(g). Moreover, the Company alleges that, before the Tax Board's May 31, 2006, letter informing the Company that it had "no mechanism for the hearing of any administrative appeals," the Tax Board had in fact offered an administrative-appeal process since at least 2001.
In its materials to this Court, the Tax Board states:
 "[The Company] makes much ado about the Tax Board's admissions in the proceedings in Fayette County [between the Tax Board, the Company, and the Fayette County Commission[4]], as if to give the impression that heretofore the Tax Board has not been completely truthful about the facts of this case. However, the Tax Board has never concealed the fact of the contents of its brochure, nor has the Tax Board ever represented to [the Company] or to any court that it had never had an administrative process in the past. The Tax Board's position on this fact is quite simple: the Board discovered that it had failed to follow the law as mandated by the Local Act, and it corrected that error."
The Company argues, however, that the Tax Board's prior practice of offering an administrative-appeal process was correct because, the Company contends, the LTSA effectively amended the procedure in § 10 of the local act to conform to the appeal procedures outlined in the TBOR.
Section 2 of the LTSA provides:
 "The Legislature hereby finds and declares that the enactment by this state of a simplified system of local sales, use, rental, and lodgings taxes which may be levied by or for the benefit of municipalities and counties in Alabama effectuates desirable public policy by promoting understanding of and compliance with applicable local tax laws. The Legislature does therefore declare that the provisions of this act are intended to accomplish these purposes."
(Emphasis added.)
The LTSA amended § 11-3-11.2, Ala. Code 1975, to provide, in part:
 "(b) Any county commission which elects to administer and collect, or contract for the collection of, any local sales and use taxes or other local taxes, shall have the same rights, remedies, power and authority, including the right to adopt and implement the same procedures, as would be available to the Department of Revenue if the tax or taxes were being administered, enforced, and *Page 258 
collected by the Department of Revenue."
In the same legislative session during which it passed the LTSA, the legislature also passed the "Local Tax Procedures Act of 1998," Act No. 98-191, Ala. Acts 1998 ("the LTPA"). Section 5 of the LTPA added § 40-2A-13(a), Ala. Code 1975, to the TBOR, which provides:
 "The Department of Revenue, a governing body of a self-administered county or municipality, or an agent of such a municipality or county may not conduct an examination of a taxpayer's books and records for compliance with applicable sales, use, rental, or lodgings tax laws except in accordance with this section and with the Alabama Taxpayers' Bill of Rights and Uniform Revenue Procedures Act."
This Court in Red Bay held that the LTSA made the administrative-appeal procedures in the TBOR "equally applicable to tax assessments and tax-collection procedures by local taxing authorities such as the City [of Red Bay] and [Franklin] County." 894 So.2d at 653.' This Court reached that conclusion in part by reading § 11-3-11.2 and § 40-2A-13(a) together. The Court also explained:
 "The Alabama Administrative Code (Department of Revenue), implementing the TBOR, sets forth the following regulations:
 "`This chapter sets forth the rules to be used by the Alabama Department of Revenue in the administration of Chapter 2A of Title 40, Code of Ala.1975, passed during the 1992 regular legislative session. Chapter 2A of Title 40, Code of Ala.1975, titled the "Alabama Taxpayers' Bill of Rights and Uniform Revenue Procedures Act," was enacted to provide equitable and uniform procedures for the operation of the Department and for all taxpayers when dealing with the Department. These rules are promulgated to implement the [TBOR] and clarify the rights of the Alabama taxpayer and the role and responsibilities of the Department in administering the state's tax laws.'
 "Ala. Admin. Code (Department of Revenue) r. 810-14-1-.01 (emphasis added).
 "The City [of Red Bay] and [Franklin] County ask us to restrict the Department's embrace of the TBOR as applicable to counties and municipalities, arguing that if the Legislature had intended for the TBOR to apply to all counties and municipalities, it could have so specified. In their brief to this Court, the City and the County contend that `only the "direct pay permit and drive-out certificate procedures, statutes of limitations, penalties, fines, punishments, and deductions" of § 40-2A-7 of the TBOR are applicable to municipalities under § 11-51-201 as a result of the [LTSA]. Because the administrative remedies contained within § 40-2A-7 are not specifically listed, they do not apply.' They further contend that § 11-3-11.2 `merely clarifies that "[a]ny rules and regulations adopted or utilized by the county or its designee shall be consistent with the rules and regulations adopted through the provisions of the Alabama Administrative Procedures Act [§ 41-22-1 et seq., Ala. Code 1975]." Nothing in this section requires that a county must undergo administrative remedies prior to filing suit.'
 "We do not read the language of the TBOR, the LTSA, and the regulations adopted by the Department so narrowly. The statutes amended by the LTSA clearly adopt the administrative rules and regulations promulgated by the Department to implement the TBOR, thus making municipalities and counties subject *Page 259 
to the statutory mandates applicable to both taxing authorities and taxpayers alike when enforcing the State's tax laws.
 "GMAC also points to § 40-2A-13(a) of the TBOR. . . .
 "`. . . .'
 "They contend that § 11-3-11.2, § 11-51-201, and § 40-2A-13(a) combine to obligate municipalities and counties to follow the Department's tax-collection procedures and to comply with the TBOR in the same manner as the Department must.
 "In response to this contention, the City and the County argue that § 40-2A-13(a) of the TBOR deals exclusively with examining a taxpayer's books and records and does not make the provisions of the TBOR applicable to cities and counties. The fact that the Legislature specifically listed municipalities and counties in § 40-2A-13(a), they argue, indicates that the Legislature intended that only certain sections of the TBOR apply to local taxing entities. Again, we find this argument a narrow and strained interpretation of the TBOR and the LTSA. It ignores the fact that the LTSA was passed at the very same session of the Legislature as, and became effective on the same day as, the act codified as § 40-2A-13. We decline to read one section of the statutory scheme in isolation. When we consider both the TBOR and the LTSA in their entirety, we can only conclude that the TBOR applies not only to the Department and taxpayers, but also to municipalities and counties."
894 So.2d at 654-55.
The Tax Board contends that Red Bay is distinguishable because, the Tax Board argues, the Tax Board is not the "agent or alter ego of and "is not controlled by [Tuscaloosa] County." The Tax Board contends that its alleged status as a non-agent is important because § 11-3-11.2 applies to a "county commission" and § 40-2A-13(a) applies to "a governing body of a self-administered county"[5] or its "agent." However, § 2 of the LTSA states that it is intended to simplify the system of "local sales, use, rental, and lodgings taxes which may be levied by or for the benefit of municipalities and counties in Alabama." (Emphasis added.) Under the local act, it is undisputed that the Tax Board collects taxes for the benefit of Tuscaloosa County. See, e.g., Act No. 94-554, § 1, amending § 11(a) of Act No. 56 to provide:
 "After deduction of [certain] expenses, the tax board shall distribute the remaining proceeds from the said taxes as follows:
 "(a) One hundred per cent (100%) of the proceeds held or collected pursuant to Sections 3A [levying a special sales *Page 260 
tax] and 4A [levying a special use tax] of this Act shall be paid to the governing body of Tuscaloosa County for general county purposes."
(Emphasis added.) Assuming, without deciding, that the Tax Board is not the agent of Tuscaloosa County, we are not persuaded that it is outside the reach of the LTSA.
The Tax Board also argues that Red Bay is distinguishable because "local laws pertaining to the City [of Red Bay] and [Franklin] County . . . indicate that they are obligated to comply with the same statutory provisions as those that regulate the Department, including the TBOR."894 So.2d at 655. In the present case, however, the Tax Board points to the following emphasized language in § 4(b) of the local. act:
 "All provisions and procedures with respect to the filing of returns, collection and payment of taxes, keeping of records, making of reports, determination of the amount of the tax due, penalties, assessments, notices, examinations of taxpayers and their books provided in the state use tax statutes with respect to the tax levied in those statutes shall be applicable to the tax levied in this section excepting, however, the procedure for appeals from assessments, and such appeals shall be made as hereafter set forth; provided, however, that any procedure or provision involving the State Department of Revenue which is incorporated herein by reference to the use tax statutes shall be deemed to apply, with respect to the tax levied in this section, to the tax board."
We do not agree with the Tax Board that Red Bay is distinguishable on that basis. This Court in Red Bay
cited the language of the local acts merely as additional authority in support of the Court's conclusion that the effect of the LTSA was to apply the TBOR procedures to local taxing authorities. See Red Bay, 894 So.2d at 655 ("Whenwe consider both the TBOR and the LTSA in their entirety, we can only conclude that the TBOR applies not only to the Department and taxpayers, but also to municipalities and counties." (emphasis added)).
The Tax Board also notes that the 1994 and 1996 amendments to the local act, which occurred after the passage of the TBOR (but before the passage of the LTSA), did not change the language the Tax Board quotes from § 4(b) of the local act. But that observation does not advance the Tax Board's argument, because the LTSA was enacted in 1998, after the 1994 and 1996 amendments to the local act.
As noted, the LTSA, as construed in Red Bay, "made the TBOR equally applicable to tax assessments and tax-collection procedures by local taxing authorities such as the City [of Red Bay] and [Franklin] County." 894 So.2d at 653. The specific TBOR procedure at issue in the present case is thestatutory right of the taxpayer, as stated in § 40-2A-7(b)(5) and § 40-2A-9(g) of the TBOR, to pursue an administrative appeal before the time begins to run for the taxpayer to file a notice of appeal in an appropriate circuit court. That statutory procedure, as noted, is in direct conflict with that part of the procedure outlined in § 10 of the local act, which does not guarantee the taxpayer the right to obtain a ruling in an administrative appeal before the time begins to run for filing a notice of appeal to the appropriate circuit court.
Section 11 of the LTSA provides:
 "Subject to the limitations and exceptions provided in Section 11-3-11.2, Code of Alabama 1975, as amended by this act, any specific provisions of a local or general law in direct conflict with a specific provision of this act is hereby repealed. The repeal of such portion, *Page 261 
however, shall not affect the remaining provisions of the local or general law not in direct conflict with a specific provision of this act."
Notably, the LTSA specifically provides that certain types of local acts were not amended or repealed by the LTSA.See § 11-3-11.2(c), Ala. Code 1975 (extending the operation of local acts that authorize a county commission only to contract with a designee for the enforcement of any tax enacted by the county); § 11-3-11.2(d) (pertaining to local acts that establish or limit the amount a county may retain for costs of collection or may pay to a designee for collection). The implication of these provisions, especially when considered together with the purposes stated in § 2 of the LTSA and the general repealer clause in § 11 of the LTSA, is that the legislature intended that those local acts affecting the various counties be amended or repealed unless excepted by the LTSA.
A general act may amend or repeal a local act by express words or by necessary implication. Vaughan v. Moore,379 So.2d 1240, 1241 (Ala. 1980).
 "Whether the enactment of a general law repeals a preexisting local law is, of course, dependent upon ascertaining the legislature's intent from the language used. Champion v. McLean, 266 Ala. 103, 95 So.2d 82 (1957). Certain principles applied in earlier cases, e.g. Connor v. State, 275 Ala. 230, 153 So.2d 787 (1963), and expressed in Sutherland, Statutes and Statutory Construction (Sands 4th ed. 1985) § 23.15 at 245, have been helpful in resolving such an issue:
 "The enactment of a general law broad enough in its scope and application to cover the field of operation of a special or local statute will generally not repeal a statute which limits its operation to a particular phase of the subject covered by the general law. . . . An implied repeal of prior statutes will be restricted to statutes of the same general nature, since the legislature is presumed to have known of the existence of prior special or particular legislation, and to have contemplated only a general treatment of the subject matter by the general enactment. Therefore, where the later general statute does not present an irreconcilable conflict the prior special statute will be construed as remaining in effect as a qualification of or exception to the general law.
 "`However, since there is no rule of law to prevent the repeal of a special by a later general statute, prior special or local statutes may be repealed by implication from the enactment of a later general statute where the legislative intent to effectuate a repeal is unequivocally expressed. A repeal will also result by implication when a comprehensive revision of a particular subject is promulgated, or upon the predication of a statewide system of administration to replace previous regulation by localities'
(Footnotes omitted.)
"To the same effect is this Court's observation on repeals by implication contained in Connor, supra,275 Ala. at 234, 153 So.2d at 791-92, quoting from 50 Am.Jur.Statutes, § 564:
 "`There is no rule which prohibits the repeal by implication of a special or specific act by a general or broad one. The question is always one of legislative intention, and the special or specific act must yield to the later general or broad act, where there is a manifest legislative intent that the general act shall be of universal application notwithstanding the prior special or specific act. It is, however, equally true that the policy against *Page 262 
implied repeals has peculiar and special force when the conflicting provisions, which are thought to work a repeal, are contained in a special or specific act and a later general or broad act. In such case, there is a presumption that the general or broad law was not designed to repeal the special or specific act, but that the special or specific act was intended to remain in force as an exception to the general or broad act, and there is a tendency to hold that where there are two acts, one special or specific act which certainly includes the matter in question, and the other a general act which standing alone would include the same matter so that the provisions of the two conflict, the special or specific act must be given the effect of establishing an exception to the general or broad act. Hence, it is a canon of statutory construction that a later statute general in its terms and not expressly repealing a prior special or specific statute, will be considered as not intended to affect the special or specific provisions of the earlier statute, unless the intention to effect the repeal is clearly manifested or unavoidably implied by the irreconcilability of the continued operation of both, or unless there is something in the general law or in the course of legislation upon its subject matter that makes it manifest that the legislature contemplated and intended a repeal.
Unless there is a plain indication of an intent that the general act shall repeal the special act, the special act will continue to have effect, and the general words with which it conflicts will be restrained and modified accordingly, so that the two are to be deemed to stand together, one as the general law of the land, and the other as the law of the particular case.'"
Day v. Morgan County Comm'n, 487 So.2d 856, 858-59
(Ala. 1986) (emphasis added).
The LTSA is the type of comprehensive statewide revision of a particular subject that this Court in Day, supra, contemplated can amend or repeal prior local acts. This Court has noted the manifest legislative intent in enacting the LTSA, i.e., that the LTSA, a general act, shall be of universal application in order to bring uniformity to local taxing systems. Red Bay, 894 So.2d at 655. Furthermore, the LTSA specifically refers to the types of special and local acts the legislature did not intend to repeal or amend, thereby evidencing its intent to amend or repeal the remaining provisions of special and local laws that conflict with the LTSA. See LTSA § 11; § 11-3-11.2(c) and (d). The Tax Board has not demonstrated that the unique appeal procedure of the local act, which is in conflict with the appeal procedure provided in the TBOR, falls within any of the excepted categories of statutes.[6] *Page 263 
In sum, we see nothing in the LTSA indicating that the administrative-appeal procedure stated in § 40-2A-7(b)(5) and § 40-2A-9(g) of the TBOR should not also apply to the Tax Board, the local taxing authority in this case. Therefore, we hold that the LTSA effectively amended § 10 of the local act to incorporate an administrative-appeal process in conformity with § 40-2A-7(b)(5) and § 40-2A-9(g) of the TBOR.
Under the facts as alleged in the complaint, the Company filed a notice of administrative appeal to the Tax Board within 30 days of the final assessment. Because the Company had the right, under the LTSA and the TBOR, to file an administrative appeal after the final assessment, the Tax Board's May 31, 2006, letter operated, in effect, as a denial of the Company's administrative appeal.[7] The Company filed a notice of appeal to the circuit court within 30 days of the Tax Board's May 31, 2006, letter; therefore, under the procedure outlined in § 4C-2A-9(g), the Company's notice of appeal to the circuit court was timely. Consequently, the trial court erred in dismissing the Company's notice of appeal as untimely. Because the notice of appeal was timely filed, the trial court erred in dismissing the Company's remaining claims as an impermissible substitute for a timely appeal.[8]
 Conclusion
The judgment of the trial court dismissing the Company's action is reversed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and SEE, WOODALL, and PARKER, JJ., concur.
[1] This Court previously denied a petition for a writ of mandamus filed by the Tax Board asking this Court to intervene in litigation in Fayette County between the Tax Board, the Company, and the Fayette County Commission. See Ex parteTuscaloosa County Special Tax Bd., 963 So.2d 610
(Ala. 2007). In their materials to this Court in the present case, the parties refer to that litigation as ongoing.
[2] Although the Alabama Department of Revenue is not listed as an author of the brochure or otherwise, the brochure the Tax Board provided to the Company with the preliminary assessment nevertheless references "the Department" throughout. The Company points out that the language of the Tax Board's brochure is virtually identical to the language in a brochure published by the Alabama Department of Revenue, entitled "Alabama Taxpayers' Bill of Rights," which summarizes the appeal procedures set forth in the Alabama Taxpayers' Bill of Rights, §§ 40-2A-1 to-18, Ala. Code 1975.
[3] Section 1 of the local act defines "county" as "Tuscaloosa County in the state."
[4] Those admissions, which the Tax Board made in litigation in Fayette County between the Fayette County Commission, the Company, and the Tax Board, see supra note 1, are (1) that the Tax Board represented to the Company that it had an "appeals officer" or "appeals representative" to which the Company could appeal from the final assessment; (2) that other taxpayers had been given the option to appeal a final assessment to such an administrative appeals officer; (3) that other taxpayers had appealed final assessments to the Tax Board's "appeals officer"; and (4) that an individual named Stanley McCracken had served as the Tax Board's "appeals officer" for at least one such administrative appeal.
[5] Section 40-2A-3(21) defines a "self-administered county or municipality" as:
 "A county or municipality that administers its own sales and use taxes or other local municipal or county taxes levied or authorized to be levied by a general or local act, or contracts out all or part of that function to a private auditing or collecting firm. The term does not include any of the following:
 "a. A county or municipality that allows the department to administer a sales, use, rental, or lodgings tax which is levied by or on behalf of that county or municipality.
 "b. A municipality or county that levies a gross receipts tax in the nature of a sales tax, as defined in subdivision (8). A county or municipality that both self-administers a sales, use, rental, or lodgings tax and allows the department to administer a sales, use, rental, or lodgings tax that is levied by or on behalf of the county or municipality is only a self-administered county or municipality with respect to those sales, use, rental, or lodgings taxes that the county or municipality administers itself or for those taxes that it contracts for the collection."
[6] The Tax Board cites § 11-3-11.2(b) as evidence of legislative intent to the contrary; that section provides, in relevant part:
 "If a specific provision of the rules and regulations of the Department of Revenue is inconsistent with a specific provision of a local act, resolution, or general law authorizing or levying a local tax, including a gross receipts tax in the nature of a sales tax, as defined in Section 40-2A-3(8), which was enacted or adopted prior to February 25, 1997, the local act, resolution, or general law provision shall prevail."
In the present case, the appeal provision in conflict with the local act is not set forth in a rule or regulation of the Department of Revenue; it is set forth in § 40-2A-7(b)(5) and § 40-2A-9(g) of the TBOR. Consequently, § 11-3-11.2(b) does not suggest that the LTSA does not apply the administrative-appeal process in § 40-2A-7(b)(5) and § 40-2A-9(g) to appeals from final assessments issued by the Tax Board.
[7] In the event that this Court ruled that the LTSA and the TBOR did not require the Tax Board to offer an administrative-appeal process, the Company argued that principles of equitable estoppel, such as those outlined inEx parte State Department of Human Resources,548 So.2d 176 (Ala. 1988), should prevent the Company's appeal from being dismissed as untimely filed.
In Ex parte State Department of Human Resources, the Department of Human Resources ("DHR") had adopted a regulation that authorized a party to appeal from a DHR-administrative ruling by filing a timely notice of appeal with the appropriate circuit court. 548 So.2d at 177. However, the statutory provision governing appeals from DHR-administrative proceedings required the party to file a timely notice of appeal with DHR in addition to filing a petition with the circuit court.548 So.2d at 176. After the petitioner in that case relied on the regulation and filed a timely notice of appeal with the circuit court but not with DHR, DHR contended that the petitioner's appeal should be dismissed because he had not filed a timely notice of appeal with DHR in accordance with the statute.548 So.2d at 177. This Court held that DHR did not have the authority to adopt a regulation creating an appeal process that conflicted with the statutory appeal process. However, applying principles of equitable estoppel, this Court refused to dismiss the appeal as untimely, noting that "it would be unfair to permit the Department to now rely on its own wrongdoing in order to deny [the petitioner] an appeal." 548 So.2d at 179.
In the present case, however, the appeal to the circuit court was timely filed under the governing statutory provisions. Consequently, we are not required to consider whether principles of equitable estoppel should apply.
[8] Because the trial court dismissed the Company's remaining claims not on the merits but on the basis that they were untimely filed, we express no opinion on the merits of those remaining claims. *Page 264